CORINNA A. SHEARER, administratrix, *vs.* DANIEL L. SHEARER & others.

In settling the affairs of a partnership dissolved by death of one of the firm, its real estate is to be converted into personalty only when and so far as necessary to pay claims against the partnership which are in the nature of debt, including balances due to individual partners for advances to the firm or payments made in its behalf, and capital furnished by a partner when it is to be repaid in specific sums; and the surviving partners may apply partnership funds to release its real estate from incumbrances which existed at the time of the purchase thereof in the lifetime of the deceased, and also to fulfil bonds or contracts then entered into by the firm for the purchase of real estate: and equity will not interfere to counteract or modify the operation of the statutes of descent or distribution on the estate of the deceased partner, by converting into personalty, and dividing as such, any real estate or interest therein, which, after adjustment of the partnership affairs on the foregoing principles, remains to be divided between his representatives and the surviving partners; nor will interfere at all, except so far as may be needful to secure to the estate of the deceased, and to the surviving partners respectively, their actual beneficial interests in such real estate when those interests do not correspond with the legal title.

BILL IN EQUITY by the administratrix of Leonard B. Shearer, to compel the conversion, and division as personalty, of real estate, bonds for the conveyance of real estate, and proceeds of real estate by way of rent or sales since the death of the com-

plainant's intestate, remaining as the property of certain part-nerships of which he was a member, after the settlement of their affairs.

The case was reserved by *Wells*, J., on the bill and answer, for determination by the full court. The material facts appear in the opinion.

*S. E. Sewall*, for the complainant, cited Bisset on Part. 55, 56 ; Cary on Part. 27 ; Collyer on Part. §§ 148, 154 ; *Townsend* v. *Devaynes*, 1 Montague on Part. 164, and appx. 97 ; *Phillips* v. *Phillips*, 1 Myl. & K. 649, 663 ; *Broom* v. *Broom*, 3 Myl. & K. 443 ; *Morris* v. *Kearsley*, 2 Y. & Col. Exch. 139 ; *Houghton* v. *Houghton*, 11 Sim. 491 ; *Dale* v. *Hamilton*, 5 Hare, 369 ; *Essex* v. *Essex*, 20 Beav. 442 ; *Darby* v. *Darby*, 3 Drewry, 495, 500, 503, 504 ; *Crawshay* v. *Collins*, 15 Ves. 218, 227, 229 ; *Craw-shay* v. *Maule*, 1 Swanst. 495, 506, 523, 529 ; *Cook* v. *Colling-ridge*, Jacob, 607 ; 3 Kent Com. (6th ed.) 64 ; Collyer on Part. §§ 308–311, 313 ; Story on Part. §§ 93 and note, 350 ; Gow on Part. 291, 292 ; *Fereday* v. *Wightwick*, Tamlyn, 250 ; *Sigourney* v. *Munn*, 7 Conn. 11, 324 ; *Dickinson* v. *Dickinson*, 29 Conn. 600 ; *Pierce* v. *Trigg*, 10 Leigh, 406, 427 ; *Lyman* v. *Lyman*, 2 Paine, 11, 41, 46–49 ; 1 Story Eq. § 674 ; *Hoxie* v. *Carr*, 1 Sumner, 173 ; *Delmonico* v. *Guillaume*, 2 Sandf. Ch. 366 ; *Hunt* v. *Benson*, 2 Humph. 459 ; *Richardson* v. *Wyatt*, 2 Desaus. 471 ; *Nicoll* v. *Ogden*, 29 Ill. 378 ; *Greene* v. *Greene*, 1 Ohio, 535 ; *Ludlow* v. *Cooper*, 4 Ohio State, 1 ; *Thayer* v. *Lane*, Walk. (Mich.) 203 ; *Buck* v. *Winn*, 11 B. Monr. 322 ; *Galbraith* v. *Gedge*, 16 B. Monr. 633, 636 ; *De Collumb* v. *Reed*, 24 N. Y. 509, 510 ; *Buchan* v. *Sumner*, 2 Barb. Ch. 165, 200 ; *Burnside* v. *Merrick*, 4 Met. 537, 541, 543 ; *Dyer* v. *Clark*, 5 Met. 575–579 ; *Howard* v. *Priest*, Ib. 582, 585 ; *Whitman* v. *Boston & Maine Railroad*, 3 Allen, 138 ; *Peck* v. *Fisher*, 7 Cush. 390 ; *Ensign* v. *Briggs*, 6 Gray, 329 ; *Fall River Whaling Co.* v. *Borden*, 10 Cush. 469 ; *Ripley* v. *Waterworth*, 7 Ves. 425 ; Park on Dower, 126–135 ; 1 Scribner on Dower, 383 ; *Hamlin* v. *Hamlin*, 19 Maine, 141 ; *Hopkinson* v. *Dumas*, 42 N. H. 296 ; *Reed* v. *Whit-ney*, 7 Gray, 536 ; *Coster* v. *Clarke*, 3 Edw. Ch. 428.

*D. P. Kimball*, for the respondents, besides authorities cited

for the complainant, cited *Buckley* v. *Buckley*, 11 Barb. 43 ; *Goodburn* v. *Stevens*, 5 Gill, 1 ; *Tillinghast* v. *Champlin*, 4 R. I. 207 ; *Smith* v. *Jackson*, 2 Edw. Ch. 28 ; *Lang's Heirs* v. *Waring*, 25 Alab. 625 ; *Yeatman* v. *Woods*, 6 Yerger, 20 ; *Greene* v. *Graham*, 5 Ohio, 264 ; *Matlock* v. *Matlock*, 5 Ind. 403 ; *Hale* v. *Plummer*, 6 Ind. 121 ; *Patterson* v. *Brewster*, 4 Edw. Ch. 352 ; *Coder* v. *Huling*, 27 Penn. State 84 ; *Piatt* v. *Oliver*, 3 McLean, 27 ; *Black* v. *Black*, 15 Georgia, 445 ; *Dilworth* v. *Mayfield*, 36 Miss. 40 ; *Piper* v. *Smith*, 1 Head, 93 ; *Wilcox* v. *Wilcox*, 13 Allen, 252 ; *Thornton* v. *Dixon*, 3 Bro. Ch. 199 ; *Coles* v. *Coles*, 15 Johns. 159 ; *M'Dermot* v. *Laurence*, 7 S. & R. 438 ; *Lang's Heirs* v. *Waring*, 17 Alab. 145 ; *Goodburn* v. *Stevens*, 1 Maryland Ch. 437 ; Collyer on Part. § 160 ; *Forster* v. *Hale*, 5 Ves. 308 ; *Smith* v. *Smith*, Ib. 189 ; *Baldwin* v. *Johnson*, Saxton, 441 ; *Pugh* v. *Currie*, 5 Alab. 446 ; 1 Washb. Real Prop. 160 ; *Nicoll* v. *Ogden*, 29 Ill. 323, 337 ; *Hawley* v. *James*, 5 Paige, 318, 451–457 ; Park on Dower, 106, 107 ; *Nicoll* v. *Miller*, 37 Ill. 387 ; Parsons on Part. 372, note *b*, and cases cited ; 4 Kent Com. (6th ed.) 482 ; *Hewes* v. *Dehon*, 3 Gray, 205 ; *Lee, appellant*, 18 Pick. 285 ; *Plimpton* v. *Fuller*, 11 Allen, 139 ; *Seaver* v. *Lewis*, 14 Mass. 83 ; *Haven* v. *Foster*, 9 Pick. 112, 133 ; 1 Hilliard Real Prop. 450, 451 ; Gen. Sts. *c.* 94, § 16 ; 2 Scribner on Dower, 24, and cases cited ; 1 Washb. Real Prop. 151.

WELLS, J.    A former bill, brought by the same party, substantially for the same purposes as the present, was dismissed on the ground that the right to adjust the affairs of the subsidiary partnerships of Shearer & Paine, and Shearer & Jones, and to receive the net results thereof due to the original partnership of L. B. & D. L. Shearer, belonged to D. L. Shearer, as the survivor of that firm.    12 Allen, 289.    Since then, the affairs of those subsidiary partnerships have been closed, and the respective shares of Paine and Jones assigned, or designated to be assigned to them ; the debts of the several partnerships have been fully paid, and all partnership balances have been adjusted and paid.    The personal property sufficed to repay all that remained due of the original capital of the plaintiff's intestate and of

D. L. Shearer; and the balance of personal property has been divided between the plaintiff and D. L. Shearer, according to their respective rights under the partnership articles. That which remains, to which the prayer of this bill applies, consists of real estate, bonds for the conveyance of real estate, and proceeds of real estate, by way of rent and of sales, since the decease of the plaintiff's intestate. Of this balance, the estate of L. B. Shearer is entitled to two thirds, and D. L. Shearer to one third. The distribution of this balance has been agreed upon by designating the several parcels and amounts to be assigned for the share of each party. This arrangement has been agreed to by all parties interested, but with the express proviso that it shall not prejudice the plaintiff in any of the rights which she claims by this bill, namely, to have the share of her intestate conveyed to her as administratrix, or sold and the proceeds paid over to her.

This claim of the administratrix is not founded upon the rights of creditors; and apparently there are no creditors to require the conversion of the real estate. Some reliance is placed upon a special agreement or declaration between Shearer and Paine, in regard to lands previously acquired by that firm; but we do not see in that writing any indication of purpose other than that all lands so acquired should be for the benefit of the parties in proportion to their interest in the copartnership, and not according to the state of the legal title.

The plaintiff's claim must rest, and is mainly placed by the argument of her counsel, upon the general rule that has been affirmed by some authorities elsewhere, that, as between the heir and the personal representative of a deceased partner, the real estate of the partnership is to be regarded in equity as personal estate. Some special facts, as to the location and legal title of the lands in question, are relied upon to strengthen the equitable considerations in favor of the widow in this case.

In *Wilcox* v. *Wilcox*, 13 Allen, 252, it was held that where, after all debts and balances between the partners are satisfied, there remains real estate of the copartnership, in which the legal title of each partner corresponds to his interest or share

in the partnership, equity will not interfere for the purpose of converting such real estate into personalty. In the present case the legal title does not correspond with the beneficial interests of the several partners. Not only are the shares of the partners unequal under the partnership agreements, but much of the real estate is held without regard to the beneficial interest, either in the sole name of Paine, or otherwise, as convenience suggested at the time of purchase.

Assuming that the force of the decision in *Wilcox* v. *Wilcox* is to be limited to the precise state of facts there presented, the question now is whether its principle extends to cases where a proper adjustment of the rights of the partners is not secured by descent of the legal title, but requires the voluntary recognition or judicial determination of equitable rights more extensive than the legal title. That decision proceeded upon the ground that the application of the principles of implied trusts to the real estate of partnerships constituted the whole foundation and the origin of the doctrine of equitable conversion ; and that those trusts are to be administered solely for the purpose of enforcing the obligations and securing the rights of the partners, as between themselves. When the legal title is held by one partner in excess of his beneficial interest, it is held in trust for the purposes of the partnership, and is chargeable, in equity, with all obligations growing out of that relation. Against such party, and against his widow and heirs, equity will interpose to secure to his copartners their actual beneficial interest.

Neither the ground of interposition nor the mode of its exercise is changed by the decease of the party in whose behalf it is required. His representatives are substituted in his place. Their rights are derivative merely. Equities between them, if any there be, are subordinate and posterior to those which spring from the relation of copartnership. The conversion of real estate into personalty is worked, if at all, for the purpose of adjusting the affairs of the partnership. It would seem, therefore, that the conversion should be made only when and so far as required for that purpose ; and that the effect upon the descent or distribution of the share of a deceased partner among his representa-

tives should be regarded as incidental merely, and not an end for which the interference of a court of equity is to be sought.

In this view of the grounds and purpose of such equitable conversion, even regarding all partnership real estate, however the legal title may be held, as held in trust for the partnership, this court are disposed to hold, notwithstanding the great weight of authority to the contrary elsewhere, that such real estate is to be converted into personalty only when such conversion is required for the payment of claims against the partnership which are in the nature of debt. Balances due to individual partners, for advances to the firm, or for payments made in its behalf, come within this definition. So also may capital, furnished by one partner, when by the terms upon which it was furnished, or from the nature and necessity of the case, it is to be repaid in specific amounts, in order to reach the net result, or body of the partnership interests, to which the proportional rights or shares of the several partners attach. In short, whatever is required to be paid or measured in precise sums must be so adjusted; and real estate, converted for that purpose, undoubtedly becomes personalty, and is to be distributed as such when paid over to the party entitled. But the shares in the body of the partnership property, those interests which are not measured by precise amounts, but consist in a common proprietorship after all special claims are satisfied, stand upon different footing. These interests are determined by the proportions fixed by the articles or organic law of the partnership. When the beneficial interests and the legal title correspond, it has already been decided that the rights of the partners in real estate so held will be left to adjust themselves by the descent of the legal title, with its incidents, as real estate of the several partners, held in common. *Wilcox* v. *Wilcox, ubi supra.* When the legal title is otherwise held, it is held in trust; and the equitable title descends in like manner and with like incidents, except as to dower. The office of equity in such case is merely to declare the trusts, and compel the legal title to serve the equitable interests. This is accomplished by directing such conveyances as will make the legal title of the several parties conform to their respective beneficial interests.

By the rule above indicated, all partnership rights and obligations are secured, and all equities growing out of that relation are met and answered. To require equitable interference to go further, and convert all real estate into personalty, for the mere purpose of a division, seems to us to be an unnecessary invasion of the rights of the copartners, and, when undertaken in the interest of one class of the representatives of a deceased partner, against another class of representatives of the same partner, it seems to be a departure from the legitimate sphere of equitable jurisdiction. It is not the province of equity to seek to counteract or modify the operation of the laws of descent and distribution.

The widow's right of dower in her husband's interest in partnership real estate, is not held subject to the payment of his private debts. As a general fact, this incident makes dower a more valuable interest than the distributive share of the widow would be if the real estate were to be converted. But we do not regard that circumstance as of any weight in determining the general rule against such conversion. On the other hand, in our view, the special facts, which, in the present case, would make it more advantageous for the widow that the partnership realty should be converted into personal estate, furnish no ground for such conversion. The equitable powers of the court are not called into exercise for the settlement of the estate of the deceased partner.

There are no equities between heirs and distributees, under our laws, which can call into exercise or quicken the powers of the court for the conversion of realty into personalty. We do not understand that, in the English courts, any such supposed equities have ever been made a ground for the doctrine of equitable conversion, as held there. In the case of *Cookson* v. *Cookson*, 8 Sim. 529, such a ground of interference was emphatically discarded. That case, however, is not one in which the full extent of the English doctrine was asserted.

Conversion into personalty is not necessary to enable creditors of the individual partner to secure payment of their debts out of the share of their debtor in real estate held in copartnership. By

our laws, all property of a debtor, whether personal or real, is liable for payment of all his debts. Creditors therefore require no equitable interposition, except such as may be necessary for the assertion of the rights of the partner himself. Their rights are secured, in respect to real estate held in copartnership, through the equities which pertain to their debtor. In this particular the laws of England differ. The inheritance there, being exempt from liability for debts by simple contract, it is only by conversion and payment of the proceeds to the personal representatives of a deceased partner that his private creditors can receive payment out of such property. How far, if at all, this consideration may have been influential in determining the extent to which the doctrine of equitable conversion should be carried, and in establishing the right of the personal representative to require it to be made in his favor, we are unable to judge. The cases in which the personal representative of a deceased partner has been held entitled to enforce this right against the heir, do not indicate, so far as we have been able to examine them, whether it is done in behalf of creditors or of distributees. The doctrine, however, seems now to be fully established, without regard to the consideration whether there are private creditors or not. *Darby* v. *Darby,* 3 Drewry, 495. This may perhaps be regarded as the most natural result of the rule holding such property liable for the payment of all partnership obligations, when it is considered how far that liability deprived partnership real estate of the fixedness and permanency of ownership which characterize the inheritance in realty there.

We cannot dismiss the subject without adverting to some of the considerations upon which the rule of conversion "out and out" is maintained in the case last cited, and which have been pressed in the argument before us.

One reason for such conversion is said to be, that courts know no mode of estimating the property, and making division of the shares between the partners, except by sale and reduction to money; and, furthermore, that one partner has no right to claim, and cannot be required to accept, his share of the capital or profits in the form of an undivided interest in specific property

But this assumes the whole question. In relation to personal property, there is a practical difficulty in this respect. The law recognizes it, and, upon the death of one partner, vests the whole title in the survivor. Even during the continuance of the copartnership, one partner may transfer the entire title of the firm by sale of any of its personal property in the course of its business. In regard to such property, the rule that it is to be in all cases converted into money is undoubtedly well established and entirely uniform everywhere. In this, equity follows the analogies of the law. On the other hand, neither partner can convey the interest of his copartner in real estate. The law provides for its transmission in undivided shares; for its partition; for its descent to the heirs of a deceased partner. It seems to us best to accord with the general principles of equitable interference that equity should recognize the division of real estate held by copartners as already effected by operation of law, unless and except so far as the terms of the copartnership and the state of the accounts require its interposition in order to make the legal title conform to the equitable or beneficial interest. When this is accomplished, equity has no longer any office to perform towards it.

Again, it is said "that the mere contract of partnership, without any express stipulation, involves in it an implied contract quite as stringent as if it were expressed, that, at the dissolution of the partnership, all the property then belonging to the partnership, whether it be ordinary stock in trade, or a leasehold interest, or a fee-simple estate in land, shall be sold, and the net proceeds, after satisfying all the partnership debts and liabilities, be divided among the partners; and that each partner and the representatives of any deceased partner have a right to insist on this being done."

In our view, there are several objections to such an implication of agreement, as the foundation of a rule of equitable conversion. In the first place, it seems necessary to assume in the outset that such is the established rule, and that parties are to be presumed to become partners in reference to its operation, in order to predicate such an inference from the mere fact of

engaging in a joint business. It would be especially difficult, without such assumption, to find a pretext for the inference, where the parties have entered into written articles and omitted all provision of that character. If the inference of such an agreement is to be made as part of the transaction of purchasing real estate with partnership funds, for partnership use, it is equally inconsistent with the failure to express such a term in the deed of conveyance. The inconsistency is even greater than that; for, by the express terms of the deed and by the well known operation of law, the estate is limited to the heirs of the several copartners, whose estate is, at law, the ordinary one of tenants in common.

In the second place, conceding the agreement as supposed, either express (provided it be not in writing) or implied, it is not such a contract as entitles the parties to a specific performance, and it does not create the trust required for the conversion of real estate. The statute demands a written agreement for that purpose. Gen. Sts. *c.* 100, § 19. The English statute seems equally to require it.

The implied trust, which is enforced in equity for the adjustment of partnership obligations, results from the investment of the funds of the partnership in the real estate in question, for the use of the partnership. Regarding it in that light, the court have but to inquire to what use the funds, represented in the land, are devoted; to whom and in what proportions the beneficial interests belong; and the execution of the trust will follow according to the nature of the rights to be secured. It is not necessary to resort to inventions to work out the equities of the case through some implied contract, or supposed intentions of the parties in entering into the relation of partnership, or in applying it to the ownership of land. The ordinary, well known and generally recognized principles of equity, as applied to trusts resulting by implication of law, are sufficient for all the requirements of that relation. We are satisfied that the principles which we have indicated apply equally to every condition in which the legal title may be placed, and to every degree and proportion of interest to which the several partners may be entitled.

It was the right of the surviving partner to apply partnership funds for the liquidation of any obligations of the firm, and for the discharge of all liens upon the joint property. The payment of money to release partnership real estate from incumbrances which existed thereon at the time of its purchase, although not a debt which they were otherwise bound to pay, was in accordance with the rights and interests of the copartners, as such, and might properly be done as a part of the adjustment of the partnership affairs, before division. We do not see that the plaintiff, either as widow or as administratrix, can claim to have such real estate interest converted back again into personalty.

The bonds, or contracts for the purchase of real estate, may properly be fulfilled ; and, if fulfilled by a conveyance according to their terms, or if specifically enforced, the rights of the widow and heirs in the land thereby acquired attach in the same manner as if the land had been conveyed in the lifetime of the deceased partner. *Reed* v. *Whitney,* 7 Gray, 533.

The conclusion to which we have come is in the direction towards which all the decisions upon the subject hitherto, in Massachusetts, have clearly pointed. It is sustained by the able and elaborate opinion of Chancellor Walworth, in *Buchan* v. *Sumner,* 2 Barb. Ch. 198; by the case of *Tillinghast* v. *Champlin,* 4 R. I. 173–207 ; and by several other American authorities. See 1 Am. Lead. Cas. 494.

The real estate to which Leonard B. Shearer would be entitled as his share of the copartnership property, to wit, that which has been designated to be conveyed or released to his representatives, will therefore be conveyed or released to his heirs, subject to liability for the payment of his private debts, if any, and subject also to such rights of dower as Corinna A. Shearer may be entitled to have in the several parcels, under the laws which exist where such real estate is situated. But this disposition cannot be ordered in the present suit, which seeks a conveyance to Corinna A. Shearer herself, or a sale for the purpose of placing the proceeds in her hands as administratrix. It is a proceeding against the heirs, and not in their behalf. The bill must therefore be dismissed.