ALFRED LYMAN DARROW et al., Appellants, *v.* LYMAN DARROW CALKINS et al., Respondents.

1. PARTITION — LIMITATION OF ACTION — INFANCY.  The plaintiffs in an action of partition, brought by the heirs of a deceased partner, claiming title to his original undivided interest in partnership lands, which he had deeded to his copartner for partnership purposes, were infants at the death of their decedent, and the action was not commenced until thirty years after his death, nor until fifteen years after the younger of the plaintiffs became of age.  *Held* (following *Howell* v. *Leavitt*, 95 N. Y. 617), that the plaintiffs, although they had slumbered upon their rights during an adverse possession of twenty-seven years, were not barred by the Statute of Limitations.

2. JURISDICTION — INFANTS.  When service of summons upon infant defendants in partition is by publication, the court acquires no jurisdiction to appoint a guardian *ad litem* or to render a judgment binding upon them as parties, prior to the expiration of the period of publication.

3. PARTNERSHIP — CHARACTER OF REALTY.  In the absence of any agreement, express or implied, between the partners to the contrary, partnership real estate retains its character as realty, with all the incidents of that species of property, between the partners themselves and also between a surviving partner and the real and personal representatives of a deceased partner, except that each share is impressed with a trust implied by law in favor of the other partner, that so far as is necessary it shall be first applied to the adjustment of partnership obligations and the payment of any balance found to be due from the one partner to the other on winding up the partnership affairs.

4. CHARACTER OF PARTNERSHIP REALTY.  To the extent necessary for the purposes of partnership equities, the character of partnership real estate, in the absence of any agreement, express or implied, between the partners to the contrary, is to be deemed, in equity, changed into personalty; but the portion of the land not required for such equities retains its character as realty, and is subject to the ordinary operation of the laws of inheritance and descent.

5. INTENTION OF PARTNERS.  Where it appears, by the express or implied agreement of the partners, that it was their intention that partnership lands should be treated and administered as personalty for all purposes, effect will be given thereto.

6. CONVERSION INTO PERSONALTY.  Real estate purchased for partnership purposes with partnership funds, and used in the partnership business, may be deemed absolutely converted into personalty for all purposes, on the ground of intention.

7. CONVERSION OF PARTNERSHIP REALTY INTO PERSONALTY — EFFECT UPON HEIRS OF DECEASED PARTNER.  One of two partners deeded to the

other the grantor's undivided interest in partnership land, which had been purchased by them as copartners with partnership funds. The deed declared that the land was to be held by the grantee as partnership property, contained a power of management and sale, and stated that the grantee was to "pay over" to the grantor, "his heirs and assigns or other legal representatives, such portion thereof as shall at the closing of the partnership business belong to or be due or coming to" the grantor, "his heirs executors, assigns or other legal representatives." *Held,* that the deed did not contravene the Statute of Uses and Trusts; that it disclosed an intention of the partners, and hence operated, to convert the land into personalty and to substitute in place of the grantor's prior interest in the land as such an interest in him and his representatives in any surplus which should remain after a sale by the grantee and the adjustment of the partnership affairs; and that, on the death of the grantor, a decree adjusting the partnership affairs and adjudicating the claim of the estate of the grantor in the partnership assets at a certain sum, in an action brought by his administratrix, was binding upon the grantor's heirs, not as parties to the action, but from the character of the property, as between them and the grantee or his representatives, and precluded them from maintaining an action to partition the land.

*Darrow* v. *Calkins,* 6 App. Div. 28, affirmed.

(Argued November 29, 1897 ; decided December 17, 1897.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered June 12, 1896, which vacated and set aside an interlocutory judgment in favor of plaintiffs, entered upon a decision of the court on trial at Special Term, and granted a motion for a new trial under section 1001 of the Code of Civil Procedure.

The action was for partition of certain lands in the city of Brooklyn. The plaintiffs, as children and heirs at law of one Edwin J. Darrow, who died intestate November 13th, 1864, claimed title to one undivided half of such land, subject to the dower right of two of the defendants, as set forth in the complaint. The defendants, Calkins, are the widow and three children of one Daniel O. Calkins, who died intestate July 20th, 1887. It is alleged in the complaint that Edwin J. Darrow, at the time of his death, "was seized in fee simple" of the undivided one-half part of the premises sought to be partitioned, and Daniel O. Calkins of the other undivided one-half. It alleges that on the 25th day of Sep-

tember, 1861, the said Edwin J. Darrow, together with his wife, Lucy P. Darrow, made and executed " a certain deed in trust " bearing date on that day, which was recorded in the county of Kings January 19th, 1865, whereby the said Edwin J. Darrow and his wife conveyed all their estate in the aforesaid real property to the said Daniel O. Calkins, " to have and to hold, to control and manage, sell and convey the whole or any part of said premises as part of the partnership property of the aforesaid Calkins and Darrow, and to pay over to the said Darrow, his heirs and assigns, or other legal representatives, such portion thereof as shall, at the closing of the partnership business of said Calkins and Darrow, belong to or be due or coming to the said Darrow, his heirs, executors, assigns or other legal representatives." It alleges in substance that a copartnership had existed up to the death of Darrow in 1864, between him and Calkins, under the firm name of Calkins and Darrow; that the trust upon which the deed of September 25, 1861, was made had not been performed; that no accounting had been had to " these plaintiffs or to any court having jurisdiction in the matter; " that the copartnership had long since ceased and terminated; that there were no outstanding debts of the firm, and that the purpose of the said trust had ceased to exist, and the trust, if ever operative, had terminated.

The interests of the respective parties, as claimed by the plaintiffs, are set forth, in substance, that the plaintiffs are each entitled to an undivided fourth part of the premises, and the children of Calkins to the other one-half part, subject to dower interests as stated.

The complaint further states that a " certain pretended " judgment was entered on the 31st day of October, 1867, in the Supreme Court of the state of New York, in an action brought by Lucy P. Darrow (the widow of Edwin J. Darrow), as administratrix of his estate, against Daniel O. Calkins and others, for the purpose of ascertaining " what interest such administratrix had, if any, in the copartnership effects of the firm of Calkins and Darrow," by which judgment it was decreed that the plaintiffs (in this action) had no title or interest in the

lands or real estate described in the complaint in that action, which included the premises sought to be partitioned in this action; that the present plaintiffs were infants and non-residents of the state when the former action was brought, and that they were not legally brought in as parties to that action, and were not bound by the appearance of the guardian *ad litem* for them therein, and that the judgment as to them was without jurisdiction and void. The complaint prayed judgment for partition according to the interests as set forth in the complaint.

The defendants, Calkins, answered the complaint, and among other things alleged that Daniel O. Calkins, at the time of his death, was the sole owner of the lands described in the complaint, and that prior to his death he had fully performed all the terms and conditions contained in the deed of September 25th, 1861, and that upon his death the lands descended to his children and heirs at law, subject to the dower right of his widow. The defendants, Calkins, further set up the judgment rendered in the action brought by the administratrix of Edwin J. Darrow against Daniel O. Calkins in bar of the present action, and also the Statute of Limitations.

On the trial the plaintiffs put in evidence deeds of four parcels of land, comprising forty-eight city lots in the city of Brooklyn, including the premises sought to be partitioned in this action, executed to Daniel O. Calkins and Edwin J. Darrow in the years 1850, 1852, 1853 and 1854. Also the deed of September 25, 1861, from Darrow and his wife to Calkins, hereinbefore referred to. This deed purported to convey to Calkins for the consideration expressed of one dollar, all the right, title and interest of Daniel and his wife in and to the real estate described therein in full and ample terms, as in a deed of bargain and sale, followed by the habendum in the words hereinbefore stated. The plaintiffs further read from the answer of Daniel O. Calkins in the suit brought against him by the administratrix of Darrow (as admissions binding upon the defendants in this action), certain paragraphs for the purpose, among other things, of showing that at the

time of the commencement of that action, there were assets of the firm in the hands of Calkins (other than the real property of the partnership) sufficient to pay all the debts of the firm and to adjust the accounts as between the partners. The plaintiffs then rested.

The defendants thereupon offered in evidence the judgment roll in the former action brought by the administratrix of Darrow. Its admission was objected to by the plaintiffs on the ground that the judgment in that action was not binding upon them, for the reason that it was rendered before the court had acquired any jurisdiction over their persons. The court sustained the objection and excluded the judgment, except that it was admitted for the single purpose of laying the foundation of a title by adverse possession under the Statute of Limitations. The defendants then gave evidence tending to establish that from the time of the rendition of the judgment of October 31, 1867, Daniel O. Calkins and his children had been in adverse possession of the lands in question, claiming title under the judgment.

The following facts are disclosed by the record in the former action : In general, the action was brought by the administratrix of the deceased partner in the firm of Calkins and Darrow against Calkins, the surviving partner, and certain persons to whom he had contracted to sell certain of the lands conveyed to him by the deed of September 25, 1861, for an accounting of the affairs of the partnership and to have the rights of the respective partners in the partnership property adjudged and determined.

The complaint set out the deed of September 25, 1861 ; averred that the lands embraced therein were held by Calkins as copartnership property to be by him disposed of as " assets of the firm ; " that he had made certain pretended and collusive sales ; that no settlement of the partnership accounts had ever been had ; that Calkins had neglected and refused to account to the plaintiff as administratrix of Darrow, and in fraud of the partnership was applying the partnership property to his own use, etc.

Calkins, the surviving partner, in his answer denied all allegations of fraud; admitted in substance that the lands held by him under the deed of September 25, 1861, were copartnership property; that upon a settlement of the copartnership business and the sale of the lands and real estate held under ·that deed, a considerable sum of money would be found to be due to the estate of Darrow; that he was anxious to have a settlement of the partnership business, and near the close of his answer he alleged that he was advised that the interest of Darrow "in the proceeds" of the lands was an interest in lands which, on his death, descended to his two infant children (the present plaintiffs); and (the answer proceeds) "he submits to the court that the children and heirs of said Edwin J. Darrow should have been made parties to this action." After the service of the answer the court on the application of the attorneys for the plaintiff, and on the 15th of October, 1867, made an order amending the summons and complaint by adding the names of the present plaintiffs and defendants, and on the 18th day of October, 1867, made an order for the service of the amended summons upon them by publication, it appearing that they were infants and non-residents of this state and resided at Hartford, Connecticut. On the 22d day of October, 1867, the summons was personally served upon them at Hartford. On the 24th day of October, on the petition of their mother, an attorney of the court was appointed their guardian *ad litem* in this action, who put in an answer submitting their rights and interests to the protection of the court. Thereafter, on the 31st of October, the final decree was entered. By this decree it was among other things adjudged that the interest of Edwin J. Darrow in the lands and real estate and the proceeds thereof, was personal estate and belonged to the plaintiff as administratrix; that the infant defendants (the present plaintiffs) had no title or interest therein as heirs of Edwin J. Darrow; that the assets of the copartnership of Calkins and Darrow, including contracts for the sale of real estate, were worth about twenty-eight thousand dollars, and that the "plaintiff and defendant Daniel O. Cal-

kins, on a full accounting between them as to said estate, having agreed upon the sum of $14,000 as the present actual value of the interest of the estate of the said Edwin J. Darrow in the said copartnership property," therefore, etc. The decree further provided that the said Calkins pay the plaintiff as administratrix said sum of $14,000, and that "thenceforward all the estate, rights, interests, property and assets of the said firm shall belong to and be the property of the said Daniel O. Calkins as his own proper goods and chattels and credits, lands and tenements." Calkins paid the $14,000 as required by the judgment, and entered into possession of all the real estate embraced in the deed of September 25, 1861, not previously sold.

The defense of the Statute of Limitations rests upon the following undisputed facts: (1) Death of Darrow (the ancestor) November 12, 1864. (2) He left two infant children (the plaintiffs). (3) Adverse possession commenced October, 1867. (4) The infant children of Darrow were then nine and eleven years of age respectively. (5) One became of age in 1877 and one in 1879. (6) This action was commenced in June, 1894, twenty-seven years after the commencement of adverse possession and fifteen years after the youngest child became of age.

*Charles N. Morgan* and *Frederick B. Bailey* for appellants. In the absence of an express or implied agreement to the contrary, real estate, purchased by a copartnership with copartnership funds, is, at all times and for all purposes, real estate, having all the legal qualities and incidents of real estate, including the rights of lienors under judgments, and as such descends to the heirs at law of a deceased partner to the extent of his interest or share therein. (*Buckley* v. *Buckley*, 11 Barb. 43; *Fairchild* v. *Fairchild*, 64 N. Y. 471; *In re Codding*, 9 Fed. Rep. 849; *Campbell* v. *Campbell*, 30 N. J. Eq. 415; Story's Eq. Juris. 1243; *Wilcox* v. *Wilcox*, 13 Allen, 252; *Shanks* v. *Klein*, 104 U. S. 18; *Greenwood* v. *Marvin*, 111 N. Y. 423; *Greene* v *Graham*, 5 Ohio, 265; 1 Washb. on Real Prop. 668; *Smith* v. *Jackson*, 2 Edw. Ch. 28; *Buchan* v. *Sumner*, 2 Barb. Ch. 165.)

Darrow in his lifetime, and his heirs after his death, were seized in fee of an undivided half part of the premises in question, and the deed from Darrow to Calkins, dated September 25, 1861, did not operate to vest in Calkins the legal title to the one-half part of such premises belonging to Darrow, but at most gave to Calkins a power in trust in respect thereto. (*Van Brunt* v. *Applegate,* 44 N. Y. 544; *Heermans* v. *Robertson,* 64 N. Y. 332; *Wright* v. *Delafield,* 23 Barb. 498; *Cooke* v. *Platt,* 98 N. Y. 35; *Nicoll* v. *Walworth,* 4 Den. 385.) The purposes for which the trust had been created in and by the deed of 1861, had ceased prior to the entry of the judgment of 1867, and the legal title to the lands remained in or reverted to the heirs of Darrow, freed from the trust or the execution of the power. (2 R. S. chap. 1, arts. 2, 3, §§ 67, 102; *Greene* v. *Graham,* 5 Ohio, 264.) The defense of the Statute of Limitations was not proved. (Code Civ. Pro. § 375; *Howell* v. *Leavitt,* 95 N. Y. 617.) The title and possession of the plaintiffs are sufficient to support the action of partition. (*Weston* v. *Stoddard,* 137 N. Y. 119.) The trial court did not err in excluding the judgment of 1867 as evidence against the plaintiffs. (*Smith* v. *Reid,* 134 N. Y. 568; *Brooklyn Trust Co.* v. *Bulmer,* 49 N. Y. 84; *Ingersoll* v. *Mangam,* 84 N. Y. 622; *Crouter* v. *Crouter,* 133 N. Y. 55.)

*Daniel Daly* and *William R. Syme* for respondents. The deed of 1861 conveyed the whole estate of Edwin J. Darrow, in the property in question, to Daniel O. Calkins, and all that Edwin J. Darrow retained was a right to a share of the proceeds of the sale of said property. (*Mott* v. *Richtmyer,* 57 N. Y. 49; 4 Kent's Com. 468; 3 Washb. on Real Prop. 372; *Jackson* v. *Ireland,* 3 Wend. 100; *Kenney* v. *Wallace,* 24 Hun, 478; *Jackson* v. *Hudson,* 3 Johns. 375; *Jackson* v. *Blodget,* 16 Johns. 472; *Patten* v. *Stitt,* 6 Robt. 431; *Fairchild* v. *Fairchild,* 64 N. Y. 477; *Shanks* v. *Klein,* 104 U. S. 18; *Delmonico* v. *Guillaume,* 2 Sandf. Ch. 366; *Greenwood* v. *Marvin,* 111 N. Y. 423.) The appellants cannot maintain an action to partition the property described in the

complaint. (*Harris* v. *Larkins*, 22 Hun, 488; *McLean* v. *McLean*, 21 N. Y. Supp. 326; *Morse* v. *Morse*, 85 N. Y. 53; *Davies* v. *Davies*, 15 Wkly. Dig. 118; 92 N. Y. 633.) The judgment in the action of *Darrow's Administratrix* v. *Calkins* would be conclusive upon the appellants even if they had not been made parties thereto. (*MacFarlane* v. *MacFarlane*, 82 Hun, 238; *Fairchild* v. *Fairchild*, 64 N. Y. 471; *Greenwood* v. *Marvin*, 111 N. Y. 423; *Van Aken* v. *Clark*, 82 Iowa, 263; *Allen* v. *Withrow*, 110 U. S. 119; *Hoyt* v. *Hoyt*, 69 Iowa, 174; *Walling* v. *Burgess*, 22 N. E. Rep. 419; Parsons on Part. [14th ed.] 360; *Godfrey* v. *White*, 43 Mich. 171; *Hollen* v. *Grimm*, 65 Fed. Rep. 450; *Gallbraith* v. *Gedge*, 16 B. Mon. 631.) The appellants herein were duly made parties to the action of *Darrow's Administratrix* v. *Calkins*, and are, therefore, bound by that judgment, and cannot collaterally attack it. (2 R. S. 317, § 2; *Ingersoll* v. *Mangam*, 84 N. Y. 626; *Croghan* v. *Livingston*, 17 N. Y. 218; *Gotendorf* v. *Goldschmidt*, 83 N. Y. 110; *Smith* v. *Reid*, 134 N. Y. 573; *Bosworth* v. *Vandewalker*, 53 N. Y. 597; *Murphy* v. *Shea*, 143 N. Y. 78; *Sloane* v. *Martin*, 77 Hun, 249; *O' Connor* v. *Felix*, 87 Hun, 179; 147 N. Y. 614; Code Civ. Pro. § 134; *Staples* v. *Fairchild*, 3 N. Y. 46; *Porter* v. *Purdy*, 29 N. Y. 110.) The appellants' remedy, if they were ever entitled to any, is barred by the Statute of Limitations. (Code Civ. Pro. § 88; *Dodge* v. *Gallatin*, 130 N. Y. 117; *Hoepfner* v. *Sevestre*, 30 N. Y. S. R. 296; *Miller* v. *Parkhurst*, 9 N. Y. S. R. 759; *Flint* v. *Bell*, 27 Hun, 155; 2 Story's Eq. Juris. [13th ed.] § 1520; *Kingsland* v. *Roberts*, 2 Paige, 193; *Ellison* v. *Moffat*, 1 Johns. Ch. 46; *Moore* v. *White*, 6 Johns. Ch. 360; *Raynor* v. *Pearsall*, 3 Johns. Ch. 578; *Ray* v. *Bogert*, 2 Johns. Cas. 432; *Phillips* v. *Prevost*, 4 Johns. Ch. 205.)

ANDREWS, Ch. J. We are relieved on this appeal from the inquiry which frequently arises between copartners and copartnership and individual creditors, whether real estate purchased and conveyed to the copartners during the existence of

the firm, by a conveyance which in form created a tenancy in common, is to be regarded as belonging to them collectively as partnership property, or as the individual property of each according to the interests disclosed on the face of the deed. The finding of the trial court, which is not assailed by any exception, is express, that the lands purchased by Daniel O. Calkins and Edwin J. Darrow were purchased by them as copartners out of the funds of the firm of Calkins and Darrow, and the deed executed by Darrow to Calkins on the 25th of September, 1861, upon which both the plaintiffs and the defendants rely as determining the character of the ownership, expressly declares in the habendum that the lands were partnership property of Calkins and Darrow. We are to assume, therefore, that the lands were originally purchased out of partnership funds, with the intention on the part of each partner that they should be held as partnership property, subject to administration under the rules governing the rights and interests of copartners in lands purchased by them to be held as the property of the partnership. The partners as between themselves made the lands partnership property, and the rights of creditors of the firm or of the individual partners are not involved. The only question here, is between the plaintiffs as heirs of Darrow, and the children of Calkins, and it turns mainly on the question whether upon the death of Darrow in 1864, an undivided half part of the lands to which he acquired the legal title by the deeds running jointly to himself and Calkins, executed between 1850 and 1854, descended to and vested in the plaintiffs as his heirs at law. The plaintiffs at the death of Darrow were infants, and although this action was not commenced until thirty years after his death, nor until fifteen years after the younger of the plaintiffs became of age, it seems, under the case of *Howell* v. *Leavitt* (95 N. Y. 617) the plaintiffs, although they have slumbered upon their rights during an adverse possession of twenty-seven years, were not barred by the Statute of Limitations. So, also, we think it must be held that they were not barred by the adjudication in the decree of October 31, 1867,

in the action brought by the administratrix of Darrow against Calkins for the settlement of the partnership affairs, which declared that "they had no title or interest in the said lands and real estate as heirs of the said Edwin J. Darrow, deceased, or otherwise." The service of the summons on the infants by publication was not completed when the judgment was entered, and until the period of publication had expired the court could acquire no jurisdiction to appoint a guardian *ad litem* or to render a judgment binding upon them as parties to the action. (*Brooklyn Trust Company* v. *Bulmer*, 49 N. Y. 84; *Crouter* v. *Crouter*, 133 id. 55.)

The legal nature and incidents of land purchased by a copartnership with copartnership funds, is a subject upon which great diversity of opinion exists in different jurisdictions. The English rule, after many fluctuations, has, as we understand the cases, come to be, that lands so purchased, whether purchased for or used for partnership purposes or not, provided only that they were intended by the partners to constitute a part of the partnership property, become *ipso facto*, in the view of a court of equity, converted into personalty for all purposes, as well for the purpose of the adjustment of the partnership debts and the claims of the partners *inter se*, as for the purpose of determining the succession as between the personal representatives of a deceased partner and the heir at law. (*Darby* v. *Darby*, 3 Drewry, 495; *Essex* v. *Essex*, 20 Beav. 442; Lindley on Part. [3d ed.] 681 *et seq.*) This doctrine had its origin in England, and is said to have grown out of the peculiar law of inheritance there, and to remedy the hardship of the rule which excludes all but the eldest child from the inheritance, and of the other rule which exempts real estate in the hands of the heir from all but the specialty debts of the ancestor. (*Fairchild* v. *Fairchild*, 64 N. Y. 471; *Shearer* v. *Shearer*, 98 Mass. 114.) Lindley, in his work on Partnership, bases the rule on the nature of the interest of each partner in the partnership property. He says (p. 687): "From the principle that a share of a partner is nothing more than his proportion of the partnership assets after they have

65

been turned into money and applied in liquidation of the partnership debts, it necessarily follows that in equity a share in a partnership, whether its property consists of land or not, must, as between the real and personal representatives of a deceased partner, be deemed to be personal and not real estate, unless, indeed, such conversion is inconsistent with the agreement between the parties." The concluding words of the paragraph quoted concede that the intention of the parties will prevent a conversion where that intention is manifested. The general doctrine of "out and out" conversion adopted by the English courts has not been followed to its full extent in this and many other American states. There is no policy growing out of our laws of inheritance or the exemption of lands from liability for simple contract debts, which requires the application of such a doctrine here. The lands of the ancestor are assets for the payment of all debts, and the persons who take by descent and under the Statute of Distribution are substantially the same. The necessity for an absolute conversion, supposed to be found in the nature of a partnership interest, seems hardly sufficient to justify a fiction which should deprive real estate of a partnership of its descendible quality when it is admitted on all hands that partnership real estate if the necessity arises is first subject to be appropriated in equity to the discharge of partnership obligations and the adjustment of the equities between the parties.

The clear current of the American decisions supports the rule that in the absence of any agreement, express or implied, between the partners to the contrary, partnership real estate retains its character as realty with all the incidents of that species of property between the partners themselves and also between a surviving partner and the real and personal representatives of a deceased partner, except that each share is impressed with a trust implied by law in favor of the other partner, that so far as is necessary it shall be first applied to the adjustment of partnership obligations and the payment of any balance found to be due from the one partner to the other on winding up the partnership affairs. To the extent necessary

for these purposes the character of the property is in equity deemed to be changed into personalty. On the death of either partner, where the title is vested in both, the share of the land standing in the name of the deceased partner descends as real estate to his heirs, subject to the equity of the surviving partner to have it appropriated to accomplish the trust to which it was primarily subjected. The working out of the mutual rights which grew out of the partnership relation does not seem to require that the character of the property should be changed until the occasion arises for a conversion and then only to the extent required. The American rule commends itself for its simplicity. It makes the legal title subservient in equity to the original trust. It disturbs it no further than is necessary for this purpose. The portion of the land not required for partnership equities retains its character as realty, and it leaves the laws of inheritance and descent to their ordinary operation. It would be useless to review in detail the authorities which seem to us to maintain what has been called the American rule. We refer to a very few of them. (*Buchan* v. *Sumner*, 2 Barb. Ch. 167; *Collumb* v. *Read*, 24 N. Y. 505; *Fairchild* v. *Fairchild, supra;* *Shearer* v. *Shearer, supra;* *Shanks* v. *Klein*, 104 U. S. 18.)

If, as sometimes happens, the title to partnership real estate is in the name of one of the partners only, on the death of the other partner, his equitable title descends to his heirs or goes to his devisees, but subject to the primary claims growing out of the partnership relation. (*Fairchild* v. *Fairchild, supra;* Parsons on Part. § 272.) But the general principles to which we have adverted are those applied by courts of equity in determining the character and incidents of partnership real estate, in the absence of any agreement, express or implied, between the partners on the subject. It is, however, generally conceded that the question whether partnership real estate shall be deemed absolutely converted into personalty for all purposes, or only converted *pro tanto* for the purpose of partnership equities, may be controlled by the express or implied agreement of the partners themselves, and that where by such

agreement it appears that it was the intention of the partners that the lands should be treated and administered as personalty for all purposes, effect will be given thereto. In respect to real estate purchased for partnership purposes with partnership funds and used in the prosecution of the partnership business, the English rule of "out and out" conversion may be regarded as properly applied on the ground of intention, even in jurisdictions which have not adopted that rule as applied to partnership real estate acquired under different circumstances and where no specific intention appeared. The investment of partnership funds in lands and chattels for the purpose of a partnership business, the fact that the two species of property are in most cases of this kind, so commingled that they cannot be separated without impairing the value of each, has been deemed to justify the inference that under such circumstances the lands as well as the chattels were intended by the partners to constitute a part of the partnership stock and that both together should take the character of personalty for all purposes, and Judge DENIO in *Collumb* v. *Read* (*supra*) expressed the opinion that to this extent the English rule of conversion prevailed here. That paramount consideration should be given to the intention of the partners when ascertained, is conceded by most of the cases. (See *Hoxie* v. *Carr*, 1 Sumner, 183; *Fall River Whaling Co.* v. *Borden*, 10 Cush. 462; *Collumb* v. *Read*, *supra;* Parsons on Partnership, § 267.)

The legal title to the real estate which the heirs of Edwin J. Darrow asked to have partitioned in this action was vested in Daniel O. Calkins at the time of the death of Darrow in November, 1864. The plaintiffs on the death of their father took no legal estate in the lands. The legal estate which prior to the 25th day of September, 1861, Darrow held in the undivided one-half of the premises was by the deed executed by him on that day conveyed to Calkins. That this was the effect of the deed we have no doubt. The deed is in terms full and ample to convey in fee the interest of Darrow to his grantee. It was coupled, however, with the declaration on

the face of the deed, that it was to be held by Calkins as partnership property, and the deed contained a power of management and sale, and this was followed by the significant clause, " and to *pay over* to the said Darrow, his heirs and assigns, or other legal representatives, such portion thereof as shall at the closing of the partnership business of said Calkins and Darrow belong to or be due or coming to said Darrow, his heirs, executors, assigns or other legal representatives." The suggestion that the deed attempted to create an express trust in lands, not within the enumerated trusts permitted by section 55 of our statute of " Uses and Trusts " (1 R. S. 728), and was, therefore void as a conveyance, is not well founded. It recognized a pre-existing trust imposed upon the lands, implied by law and arising out of the partnership relation, and that the trust was to continue notwithstanding the conveyance of the legal title. This was not, we think, in contravention of the statute, which contemplated the creation of original trusts, and not the abrogation of existing trusts resulting from or implied by operation of law ; nor did it render inoperative the subsequent recognition of such an existing trust in connection with a conveyance of the legal title. We think the legal title to the one-half part of the land passed by Darrow's deed, subject to the performance by Calkins of the trust therein declared. The important question is, whether it operated to convert the partnership lands into personalty, and to change the interest of Darrow, or his representatives, from an interest in the land as realty into an interest in the proceeds of the lands, after a sale thereof by Calkins under the power contained in the deed.

We are of opinion that it was the intention of the partners, disclosed on the face of the deed and by the surrounding circumstances, to substitute in place of Darrow's prior interest in the lands, as such, an interest in him and his representatives in any surplus which should remain after a sale by Calkins and the adjustment of the partnership affairs. It is not necessary to decide whether the surplus, when ascertained, would go to the real or personal representatives of Darrow. As between

Darrow and his representatives, and Calkins and his representatives, the deed operated as a conversion of the lands into personalty. The personal representatives of Darrow were entitled to enforce, in an action for an accounting and an adjustment of the partnership affairs, the claims of Darrow's estate. This was the purpose of the action which resulted in the decree of October 31st, 1867, and we think that decree was binding upon the plaintiffs, not on the ground that they were parties, but for the reason that no controversy existing as to the original character of the property as partnership property, or as to the subsequent dealing between the partners in respect to it, the heirs of Darrow were not necessary parties to a final adjustment of the partnership affairs, including the interest of the Darrow estate growing out of his relation to the lands under the deed of September 25th, 1861. It was open to the plaintiffs on an accounting by the administratrix of the Darrow estate to claim that the $14,000, received by her under the decree in the action for an accounting, should be regarded as real and not personal assets, and that they were entitled to it in their character as heirs, and not as distributees.

We think the order of the court below reversing the judgment at Special Term was correct, and it should, therefore, be affirmed and judgment absolute entered for the defendants on the stipulation, with costs.

All concur.

Order affirmed, etc. _____