286 P.2d 796

In the Matter of the ESTATE of Harry OSTLER, deceased.

Allie S. OSTLER and Harry R. Ostler, executors, Respondents,

v.

STATE TAX COMMISSION of Utah, Appellant,

No. 8269.

Supreme Court of Utah.

July 23, 1955.

**48**

Harley W. Gustin, Pugsley, Hayes & Rampton, C. Preston Allen, Salt Lake City, for appellant.

McCullough, Boyce & McCullough, Salt Lake City, for respondents.

McDONOUGH, Chief Justice.

The widow of Harry Ostler, Allie S. Ostler, and a son, Harry R. Ostler, were named as his executors in his will. Since Mrs. Ostler elected to renounce her husband's will and take instead the distributive share of one-third of all real property possessed by him during the marriage under U.C.A. 1953, 74-4-3, the executors excluded from their computation for the Utah State Inheritance Tax an item of $13,600, representing one-third of the value of the deceased's interest in real property used in the business of Ostler Candy Company. The State Tax Commission gave notice that this amount must be included in the gross estate for tax purposes and the executors filed a petition in the lower court for the purpose of fixing the inheritance tax. A hearing was had and the court entered a decree fixing the tax as contended for by the executors.

The Tax Commission appealed from this decree and was joined by the son, Harry R. Ostler, in his individual capacity, as a residuary beneficiary under the will.

We have no transcript of the proceedings below and the entire record consists of the pleadings of the executors only and the findings of the trial court. Many pertinent facts must be gleaned from statements, to which no objections were taken, in the appeal briefs of the parties.

The property with which we are here concerned is recorded in the name of Allie S. Ostler, respondent, the widow of Harry

Ostler. The record title has so appeared for a number of years, but in 1949 Mrs. Ostler and her husband executed an instrument entitled "Agreement and Declaration of Interest," which described the premises and stated that "the interest of Harry Ostler in the whole of said business, including the aforesaid real property, is an undivided fifty percent (50%) thereof and that the interest of Allie S. Ostler in the whole of said business, including the aforesaid real property, is an undivided fifty percent (50%) thereof." Respondents' petition to the lower court alleged that since the date of that instrument the property has been listed as a partnership asset and the business has been conducted as a partnership and the lower court so found.

The character of partnership property upon the death of a partner at the common law is a question which has occasioned much litigation, the courts taking two views, the English rule of "out and out conversion" of realty to personalty, and the American rule of "equitable conversion pro tanto." Despite their denomination, both rules have been used by different courts at different times in both countries. Both rules are generally interpreted to grant an equitable right of survivorship for the purpose of winding up the affairs of the partnership and subjecting the property, real or personal, to the claims of creditors of the firm, before division and distribution to the surviving partner and the heirs of the deceased partner. Thus, real property, for that limited purpose, is considered as personalty; but, after firm debts have been paid, realty resumes its historical incidents, including dower and curtesy rights, for distribution under the American rule, whereas, the English rule distributes the same property as personalty. See 25 A.L.R. annotations, page 389 ff.

Proponents of each view have claimed for their theory simplicity of administration, Darrow v. Calkins, 154 N.Y. 503, 49 N.E. 61, 48 L.R.A. 299; cf. Darby v. Darby, 3 Drew 495, 61 Eng.Reprint 992, and a closer adherence to the intention of the partners, Lenow v. Fones, 48 Ark. 557, 4 S.W. 56; cf. Pierce's Adm'r v. Trigg's Heirs, 10 Leigh, Va., 406.

In 1890, England enacted the Partnership Act 1890, 53 and 54 Vict. Chap. 39, declaring the rule, in accordance with the majority of her reported cases to be:

"* * * where land or any heritable interest therein has become partnership property, it shall, unless the contrary intention appears, be treated as between the partners (including the representative of a deceased partner), and also as between the heirs of a deceased partner and his executors or administrators as personal or movable, and not real or heritable, estate."

This statute clearly settled the debate in England, but the American courts continued to split their decisions along the two lines, finding it necessary to engraft upon

each rule many exceptions to reach an equitable result in hard cases. In 1914, the Conference of Commissioners on Uniform State Laws approved the Uniform Partnership Act, which was adopted by Pennsylvania and Wisconsin in 1915. At present, the laws of 33 states and Alaska contain this act.

Section 25 of the Act, our U.C.A.1953, 48–1–22, sets forth with particularity the incidents of a new tenancy, "a tenant in partnership." The Commissioners' note to that section, 7 U.L.A., Uniform Partnership Act, p. 144, delineates their reasons for this description, explaining that the courts had attempted to apply the ancient concepts of co-tenancy as joint tenancy or tenancy in common even where they were inapplicable to the partnership relation:

> "The Commissioners, however, believe that the proper way to end the confusion which has arisen out of the attempt to treat partners as joint tenants, is to recognize the fact that the rights of a partner as co-owner with his partners of specific partnership property should depend on the necessities of the partnership relation. In short, that the legal incidents of the tenancy in partnership are not necessarily those of any other co-ownership.

> "In the clauses of this section these incidents of tenancy in partnership are stated with several practical results of

value. In the first place the law is greatly simplified in expression. In the second place the danger of the courts reaching an inequitable conclusion by refusing to modify the results of applying the legal incidents of joint tenancy to the partnership relation is done away with. Finally, ground is laid for the simplification of a procedure in those cases where the separate creditor desires to secure satisfaction of his debtor's interest in the partnership."

By U.C.A.1953, 48–1–22, the incidents of a tenancy in partnership are thus described:

> "(1) A partner is coowner with his partners of specific partnership property holding as a tenant in partnership.

> "(2) The incidents of this tenancy are such that:

> "(a) A partner, subject to the provisions of this chapter and to any agreement between the partners, has an equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess such property for any other purpose without the consent of his partners.

> "(b) A partner's right in specific partnership property is not assignable, except in connection with the assignment of rights of all the partners in the same property.

> "(c) A partner's right in specific partnership property is not subject

to attachment or execution, except on a claim against the partnership. When partnership property is attached for a partnership debt, the partners, or any of them, or the representative of a deceased partner, can not claim any right under the homestead or exemption laws.

"(d) On the death of a partner his right in specific partnership property vests in the surviving partner or partners, except where the deceased was the last surviving partner, when his right in such property vests in his legal representatives. Such surviving partner or partners, or the legal representatives of the last surviving partner, has no right to possess the partnership property for any but a partnership purpose.

"(e) A partner's right in specific partnership property *is not subject to dower, curtesy, or allowances to widows,* heirs or next of kin." (Emphasis added.)

Ordinarily, the last quoted portion of this section would appear clearly to exclude the widow's rights in partnership realty, but respondent argues that dower and curtesy were abolished in this state in 1888, U.C.A.1953, 74–4–9, and that U.C.A.1953, 74–4–3, granting a wife's distributive share in one-third of her husband's real property is unaffected by the Uniform Partnership Act. It is for this reason that we must consider whether by the Uniform Partnership Act the legislature intended to adopt the English rule of conversion of real property into personalty when it is partnership property. If so, then Mr. Ostler owned no real property *in the firm* to which his wife's interest could attach. Certainly, the above section would indicate such an intention and this view is buttressed by other sections from the Act:

"48–1–23. A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property."

"48–1–39. When any partner retires or dies and the business is continued * * * he or his legal representatives as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership * * *."

Courts which have considered the changes brought about by the adoption of the Uniform Partnership Act have concluded that the legislative intention was to enact the English rule. Cultra v. Cultra, 188 Tenn. 506, 221 S.W.2d 533; Wharf v. Wharf, 306 Ill. 79, 137 N.E. 446. And, with the exception of one state, the courts have unanimously held that marital rights in specific partnership property have been excluded by the Act, In re Dumarest's Estate, 146 Misc. 442, 262 N.Y.S. 450; State v. Elsbury, 63 Nev. 463, 175 P.2d 430, 169 A. L.R. 364. The single case cited to us taking

a contrary view under the Act is Hannold v. Hannold, 4 N.J.Super. 381, 67 A.2d 352, which followed cases determined in New Jersey prior to the statutory enactment and merely considered one section of the Act. The reasoning that the legislature attempted to give some attributes of legal entity to a partnership and thus stabilize joint business ventures by making its property less subject to individual claims is far more compelling.

■ The scant record before us limits our view of this case, but respondent now argues that the property involved was never partnership property but rather real estate which her husband held in his own name for use of the partnership. It appears undisputed that a partnership existed, but we have no means of determining whether the agreement between husband and wife initiated it in 1949 or whether the conveyance of the property to Harry Ostler preceded the formation of the firm. This property was not acquired with partnership funds so as to bring it within the second paragraph of U.C.A.1953, 48–1–5, defining partnership property, and whether or not · it was originally brought into the partnership stock or acquired on account of the partnership must depend upon facts not properly before us in this proceeding. If Harry Ostler was at any time during this marriage seized of real property held in his own right, or conveyed to the partnership without a release of Mrs. Ostler's interest, her claim should be allowed under U.C.A.1953, 74–4–3. If the property was brought into the firm by Mrs. Ostler as her contribution, then, of course, it became partnership property and was converted to personalty, to which her interest as a wife would not attach.

Reversed and remanded for further proceedings. Each party to bear his own costs.

CROCKETT, WADE and WORTHEN, JJ., and NORSETH, District Judge, concur.

HENRIOD, J., having disqualified himself, did not participate herein.