**DISTRICT OF COLUMBIA, Appellant,**

v.

**The RIGGS NATIONAL BANK OF WASHINGTON, D. C., Executor of the Estate of Lulie Dickson, Appellee.**

**No. 7517.**

District of Columbia Court of Appeals.

Submitted Jan. 23, 1974.

Decided April 1, 1975.

C. Francis Murphy, Corp. Counsel, and Henry E. Wixon and Melvin J. Washington, Asst. Corp. Counsel, Washington, D. C., were on the brief for appellant.

E. Michael Paturis, Washington, D. C., was on the brief for appellee.

Before NEBEKER, YEAGLEY and HARRIS, Associate Judges.

HARRIS, Associate Judge:

The District of Columbia appeals from the trial court's ruling that the District must refund $10,125.15 (plus $405 interest) representing inheritance tax paid under protest by the estate of Lulie Dickson. Finding that the tax was properly assessed, we reverse.

I

The principal facts are not in dispute. The decedent, Lulie Dickson (Lulie), and her brother, Waverly W. Dickson (Waverly), formed a partnership in 1935, using the name Friden Calculator Sales Agency. In 1943 they reduced their partnership agreement to writing. All partnership assets and profits were to be divided equally.[1]

Prior to 1960, partnership funds were used to purchase four parcels of land on Wisconsin Avenue in the District of Columbia. Title to the land was taken in the names of Lulie and Waverly as joint tenants. Partnership funds later were used to erect three buildings on the land. The parties stipulated that Lulie and Waverly regarded the land and buildings as partnership property; the Dicksons consistently carried the realty on the partnership's books as partnership assets.

Waverly predeceased his sister by three years. When Lulie died (March 23, 1970), the partnership's books also carried three savings accounts, with deposits totaling $11,036.65, as partnership assets. Those funds were on deposit in the names of Lulie and Waverly as joint tenants.[2]

The issue before us is whether the full value of the realty and the savings accounts which had been held in joint tenancy became Lulie's by right of survivorship when Waverly died, so that their entire worth was part of Lulie's estate for inheritance tax purposes upon her death.[3] If the assets did not become Lulie's by survi-

1. In 1962 the partnership's franchise agreement with the Friden Company was cancelled. The partnership continued to operate under a new name, Dickson Company, with no change in the partnership relationship between Lulie and Waverly.

2. Rentals derived from the Wisconsin Avenue realty and interest earned on the three savings accounts were reported for tax purposes to the federal government as partnership income and to the District of Columbia as income from an unincorporated business.

3. The District argues that the lower court committed reversible error by refusing to admit into evidence a report prepared by Lulie's guardian ad litem for litigation in the United States District Court for the District of Columbia concerning the inheritance tax aspects of Waverly's estate. We do not reach that question because we reverse on other grounds.

vorship, then they should have been divided equally between Lulie and Waverly's estate after the dissolution and winding up of the partnership which was precipitated by Waverly's death, and only half of the assets now would be taxable as part of Lulie's estate.[4] The question to be decided is one of first impression in this jurisdiction.

The District of Columbia inheritance tax return filed by The Riggs National Bank of Washington, D. C. (Riggs) as executor of Lulie's estate included half the value of both the Wisconsin Avenue realty and the savings accounts in her estate. The District's Department of Finance and Revenue subsequently informed the executor that the entire value of those assets should be included. The Department's letter stated:

> [A]fter lengthy consideration of both the facts and the law governing the taxability of the assets registered jointly between the above decedents, this office finds that such assets must be taxed as joint under Section 47–1602 of the D.C. Code (1967 Ed.), under which, of course, Lulie Dickson is considered the beneficiary of Waverly Dickson's interest for tax purposes and is deemed to be the sole owner at the time of her subsequent death.

The additional tax of $10,125.15 (plus interest) was paid under protest. Riggs then brought suit in Superior Court to recover that amount. The trial court found the assets in question to be partnership property, and ruled that the taxes and interest must be refunded. The trial court erred in assuming that the assets in question had to be considered to be either partnership assets or property held in joint tenancy, and could not be both. Under the circumstances presented here, holding property as partnership assets and holding it in joint tenancy are not mutually exclusive.

## II

■ The manner in which the real estate was held must be analyzed with reference to the common law of partnerships, since the realty was acquired before the District's adoption of the Uniform Partnership Act (UPA) in 1962.[5] The parties' rights in the property are determined based upon the substantive law in effect at the time of acquisition. *See* Staub v. Staub, 47 App.D.C. 182, 183, denying petition for rehearing in 47 App.D.C. 180 (1918). This principle is not altered by the UPA, which provides that its terms "shall not be construed so as . . . to affect any . . . right accrued before this chapter takes effect." D.C.Code 1973, § 41–303(5).

■ We conclude that our common law did not bar partners' holding partnership realty in joint tenancy, as long as the rights of partnership creditors were protected. *See* Williams v. Dovell, 202 Md. 351, 354–58, 96 A.2d 484, 486–87 (1953). Under the District's common law, if land was purchased for partnership purposes, but the deed was made out in the name of a single partner, the legal title vested in that partner subject to a trust in favor of the other partners. *See* Stone v. Fowlkes, 29 App.D.C. 379, 383 (1907). This is in accord with the majority American common law rule, which was described in Dar-

---

4. There is no question here of the relative contributions Lulie and Waverly may have made in acquiring the assets. The District of Columbia inheritance tax—unlike the federal estate tax—does not tax on the basis of the consideration supplied, but determines the taxable portion on the basis of legal title. McKimmey v. District of Columbia, 112 U.S. App.D.C. 132, 133–34, 300 F.2d 724, 725–26 (1962). We also would note that Waverly's three daughters ultimately would receive the asset involved, regardless of whether they first became Lulie's by right of survivorship, in light of the provisions of Waverly's and Lulie's respective wills.

5. D.C.Code 1973, § 41–301 et seq. The UPA dramatically changed the manner in which specific partnership assets are held by adopting the concept of a tenancy in partnership. *See* D.C.Code 1973, § 41–324.

row v. Calkins, 154 N.Y. 503, 514, 49 N.E. 61, 64 (1897) as follows:

> The clear current of the American decisions supports the rule that, in the absence of any agreement, express or implied, between the partners to the contrary, partnership real estate retains its character as realty with all the incidents of that species of property between the partners themselves, and also between a surviving partner and the real and personal representatives of a deceased partner, except that each share is impressed with a trust implied by law in favor of the other partner that, so far as is necessary it shall be first applied to the adjustment of partnership obligations and the payment of any balance found to be due from the one partner to the other on winding up the partnership affairs.

In many jurisdictions the rule enunciated in Darrow v. Calkins has been referred to as "equitable conversion." Darrow v. Calkins itself, for example, continues: "To the extent necessary for these purposes the character of the property is, in equity, deemed to be changed into personality." *Id.* at 514–15, 49 N.E. at 64. In the District of Columbia and some other jurisdictions, however, the principle has been stated as involving a type of trust, rather than equitable conversion. *See* Stone v. Fowlkes, *supra* 29 App.D.C. at 383; 1 J. Barrett & E. Seago, Partners and Partnerships: Law and Taxation 204 (1956).[6]

■ The common law thus deemed partnership realty held in the names of one or more partners to be impressed with a trust so that the property would be available, to the extent necessary, to satisfy the claims of partnership creditors. Whatever portion of the realty was not required for such partnership purposes could be disposed of at death, by the persons in whose names it was held, like any other real property they owned. *See* Blodgett v. Silberman, 277 U.S. 1, 11–12, 48 S.Ct. 410, 72 L.Ed. 749 (1928), *quoting* Darrow v. Calkins, *supra*, 154 N.Y. at 514–15, 49 N.E. at 64. The partners had the power to reach an express or implied agreement that their partnership real estate would be used entirely for partnership purposes, but the portion of the realty not necessary for partnership claims descended as realty at death unless a specific contrary intention was shown. *Ibid.*

■ The common law presumed that real property acquired in the names of more than one partner was held in a tenancy in common, rather than in a joint tenancy. *See* Williams v. Dovell, *supra*, 202 Md. at 357, 96 A.2d at 487; 1 Powell, Real Property ¶138 (1973 ed.). However, partners were not legally incapable of holding realty in a joint tenancy if they made clear their intention to do so, and if the four essential characteristics of joint tenancy— unity of interest, unity of title, unity of time, and unity of possession—were present. *See* Williams v. Dovell, *supra*, 202 Md. at 357–58, 96 A.2d at 487–88. For the common law partnership, both tenancy in common and joint tenancy possessed attributes that were satisfactory for holding title to partnership realty. *See* 2 J. Barrett & E. Seago, Partners and Partnerships: Law and Taxation 451 (1956).

■ The common law allowed partners, as between themselves, to make such disposition of partnership property as they deemed fit, so long as the rights of partnership creditors were protected. *See* Stroh v. Dumas, 117 Vt. 13, 16, 84 A.2d

---

6. The American rule differed from the English rule, under which all realty which became partnership property was treated as personalty between partners, and between the heirs of a deceased partner and his executors or administrators, unless a contrary intention appeared. *See* Williams v. Dovell, *supra* 202 Md. at 354–56, 96 A.2d at 486–87; 1 J. Barrett & E. Seago, Partners and Partnerships: Law and Taxation 200–03 (1956). The UPA essentially adopts the English rule. *See* Vlamis v. De Weese, 216 Md. 384, 394–95, 140 A.2d 665, 671–72 (1958); Ewing v. Caldwell, 243 N.C. 18, 23, 89 S.E.2d 774, 777–78 (1955). *See generally* Uniform Partnership Act § 25, Comment.

408, 410 (1951). *See also* McKinnon v. McKinnon, 56 F. 409 (8th Cir. 1893); Michaels v. Donato, 4 N.J.Super. 570, 67 A.2d 911 (1949). The passage of right to land by survivorship was obliged to be interpreted and applied so as not to defeat the claims of such creditors.

 We hold, therefore, that a joint tenancy between partners in a common law partnership operates to pass right to real property by survivorship, so long (as apparently is true here) as the property is not required for partnership purposes. That is, the survivorship feature of a joint tenancy acts only on that portion of the realty which is not necessary to satisfy claims of partnership creditors. *See* Williams v. Dovell, *supra*, 202 Md. at 357–58, 96 A.2d at 487; 2 J. Barrett & E. Seago, Partners and Partnerships: Law and Taxation 451 (1956); *cf.* Jones v. Schellenberger, 225 F.2d 784, 791–94 (7th Cir. 1955), cert. denied, 350 U.S. 989, 76 S.Ct. 476, 100 L.Ed. 855 (1956); Streck v. Streck, 35 Ill. App.2d 473, 480, 183 N.E.2d 26, 30–31 (1962); Lynch v. Ilg, 348 Ill.App. 545, 109 N.E.2d 362 (1952), appeal denied, 413 Ill. 633 (1953); Stewart v. Todd, 190 Iowa 283, 283–88, 173 N.W. 619, 620–21 (1919).

 Normally no claims (except prior liens) can be enforced against a decedent's former interest in jointly owned property, and no deductions are allowed against such property in computing inheritance taxes. Hankin v. District of Columbia, D.C.App., 310 A.2d 56, 58 (1973). This principle stems from the fact that when one joint tenant dies, the decedent's property interest terminates, and the prior joint interest of the other joint tenant ripens automatically into sole ownership. *Ibid.* However, when real estate assets of a common law partnership are held in joint tenancy, the survivorship right acts only on that portion of the value which is not required to meet the claims of partnership creditors.[7]

### III

 We apply the UPA in deciding whether Lulie's estate also includes the entire value of the three savings accounts, since the record does not indicate that the parties' rights in those funds were established before the UPA was adopted in 1962.[8] The UPA sets forth rules for distributing a partnership's personalty (as well as its realty) after dissolution. D.C. Code 1973, §§ 41–328 to 41–342. The method set forth there, however, is not exclusive. Subject to the rights of creditors, and in the absence of fraud, partners may agree to a distribution of the property on dissolu-

---

7. Although the point was not raised by the parties, to avoid future confusion we note that D.C.Code 1973, § 47–1601(k), is not applicable to these facts. That section states: "The doctrine of equitable conversion shall not be invoked in the assessment of taxes under this chapter [on inheritance and estate taxes]." The legislative history makes only brief reference to this 1938 amendment of the Code and does not explain its purpose. *See* Senate Comm. on the District of Columbia, Amending District of Columbia Revenue Act of 1937, S.Rep.No.1612, 75th Cong., 3d Sess. 4 (1938); House Comm. on the District of Columbia, Amending District of Columbia Revenue Act of 1937, H.R.Rep.No.2105, 75th Cong., 3d Sess. 8 (1938); Hearings on H.R. 10066 Before the Subcomm. on Fiscal Affairs of the House Comm. on the District of Columbia, 75th Cong., 3d Sess. 2 (1938). We conclude, however, that it refers to the equitable conversion which occurs during the period after the execution of a contract for the sale of realty but before settlement. The amendment eliminates any doubt as to whose estate includes the property for inheritance tax purposes when a prospective buyer or seller dies during that period. *See generally* 8 Thompson, Real Property § 4579 (perm. ed. rev. 1940). Section 47–1601(k) does not refer to the principle discussed in this case, whereby partnership realty owned in the names of one or more partners is impressed with a trust in favor of partnership claims. Although, as noted, this rule was termed "equitable conversion" in many jurisdictions, in the District of Columbia it was denominated a rule of trust. *See* Stone v. Fowlkes, *supra*, 29 App.D.C. at 383. *See generally* 2A Sutherland, Statutory Construction § 50.03 (4th ed. 1973).

8. We would, however, reach the same conclusion under the common law.

tion which is different from that which would obtain under the UPA in the absence of an agreement. *See* Ensor v. Ensor, 270 Md. 549, 554, 312 A.2d 286, 289 (1973); Anderson v. Anderson, 215 Md. 483, 488–89, 138 A.2d 880, 883 (1958); Wallner v. Schmitz, 239 Minn. 93, 95–96, 57 N.W.2d 821, 823 (1953); *cf.* In re Decker, 295 F.Supp. 501, 509–10 (W.D. Va. 1969), aff'd sub nom. Woodson v. Gilmer, 420 F.2d 378 (4th Cir. 1970).

This ability of partners to agree upon other methods of distribution is made explicit by the UPA. For example, D.C. Code 1973, § 41–337 states that partners have certain rights concerning application of partnership property upon dissolution "unless otherwise agreed". Section 41–339 explains that the method described for settling accounts among partners after dissolution is "subject to any agreement to the contrary". Additionally, § 41–342 makes a partner's right to an account of his interest accrue only "in the absence of any agreement to the contrary."

■ We conclude that if partners maintain savings accounts as joint tenants, and there is evidence that they understood the consequences of joint tenancy, effect will be given to the right of survivorship. *See* Horowitz v. Fainberg, 126 U.S.App.D.C. 122, 374 F.2d 336 (1967); Wallner v. Schmitz, *supra*, 239 Minn. at 95–96, 57 N.W.2d at 823; Stroh v. Dumas, *supra*, 117 Vt. at 16–18, 84 A.2d at 410–11. The rights of partnership creditors, however, must be protected. We therefore interpret the right of survivorship as attaching only to that portion of the accounts which is not necessary to satisfy claims of partnership creditors. *See* Stroh v. Dumas, *supra* at 16, 84 A.2d at 410; *cf.* Jones v. Schellenberger, *supra*, 225 F.2d at 793–94; Lynch v. Ilg, *supra*, 348 Ill.App. at 545–46, 109 N.E.2d at 362–63.

## IV

■ In this case, all of the four unities of joint tenancy appear to be present.

The record shows no evidence that any partnership creditors' claims were not met by partnership assets which were not held in joint tenancy. Also, there is no indication that Lulie and Waverly—both astute business people—did not understand and intend the survivorship consequences of joint tenancy. Nor is there evidence that they at any time intended to sever the joint tenancy in either the realty or the savings accounts. *See generally* Robertson v. United States, 281 F.Supp. 955, 960–62 (D.C. Ala.1968); Williams v. Dovell, *supra*, 202 Md. at 358, 96 A.2d at 487–88. The partnership assets became Lulie's by right of survivorship on Waverly's death, and were subject to the District of Columbia inheritance tax as part of her estate.

Reversed and remanded.