No. 84-167

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

IN THE MATTER OF THE ESTATE OF
ROBERT R. PALMER, Deceased.

_____

APPEAL FROM: District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Byron Robb, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hooks & Budewitz; Patrick F. Hooks argued, Townsend,
Montana
Moore, Rice, O'Connell & Refling; Perry J. Moore,
Bozeman, Montana

For Respondent:

Drysdale, McLean, Screnar & DiRe; Roger Scouten &
James McLean argued, Bozeman, Montana

_____

Submitted: May 23, 1985

Decided: October 21, 1985

Filed: OCT 21 1985

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

A motion to determine the existence of a joint tenancy was filed in the probate proceedings in the District Court of Park County. An appeal was taken from the order determining that the checking account, cattle, cattle brands and brokerage account did not pass to the surviving partner in his capacity as surviving joint tenant. We affirm the District Court.

The issues are:

1. Did the District Court err in holding that the bank checking account in the names of William Palmer and Robert Palmer as joint tenants was partnership property?

2. Did the District Court err in holding that the cattle branded with a brand registered in the names of "William Palmer or Robert Palmer" were partnership property?

3. Did the District Court err in holding that a brokerage account, registered in the name of William Palmer for which Robert Palmer signed a document as a joint tenant, was partnership property?

Following are pertinent facts contained in the uncontested findings of fact of the District Court.

Robert Palmer (Robert) died on November 8, 1981. For many years prior to Robert's death, he and his brother, William, operated and conducted a partnership called "Palmer Brothers." The partnership was engaged in the business of raising livestock and feed, conducting a feedlot operation, and buying and selling cattle on ranchlands about 10 miles northeast of Livingston in Park County, Montana. William and Mildred, his wife, resided on the ranch for many years prior to Robert's death, while Robert resided in Livingston. Robert married Constance on September 21, 1979, and Constance is Robert's sole heir at law. For many years prior to

Robert's death, Robert and William owned a checking account in First Bank Livingston, in which they deposited all receipts and the proceeds from cattle sales and other income, and from which they paid all partnership debts and obligations. Additional facts will be set forth in our discussion of the checking account issue. William and Brad Palmer, son of William, claimed the proceeds in the checking account at the time of Robert's death as surviving joint tenants. Constance contends that the balance is a part of the partnership assets and should be accounted for in the partnership. Because of the or brand certificate, William claims that the brands and any cattle carrying them passed to him as surviving joint tenant, and to Mildred as his successor in interest. Constance claims the property is part of the partnership's assets and should be accounted for in the partnership. In 1979, William opened a commodity or brokerage account with Merrill Lynch. William claims the Merrill Lynch account as his sole property, or as surviving joint tenant if the account is found to be joint, while Constance claims the account is part of the partnership assets.

The District Court pointed out that William testified that his relationship with Robert was very close and they got along well both as friends and as business partners until the last few years of Robert's life, when his personality changed and he did erratic things. Constance testified that Robert and William were not friendly for several years before Robert's death, although she acknowledged that Robert named William as personal representative in his 1977 will. Another brother, Maro Palmer, testified that Robert had told him William was trying to take the business away from him and that Robert's behavior had not changed until a few weeks before death. Brad Palmer testified that William and Robert

3

got along well with only normal disagreements until the last year or so when Robert became unable to make decisions and lost his judgment. A neighboring rancher testified that the brothers got along well and he never saw any disagreement.

The District Court found that the partnership income tax returns for 1972 through 1981, with 1974 missing, showed that the partnership paid all of the expenses of operating the ranch, including huge sums for purchasing and feeding livestock, interest on loans, taxes, vet care and trucking, from the Palmer Brothers' checking account; that all partnership income, including profits from cattle sales, was deposited in that account; and that the partners split equally any net profits or losses. The District Court further found that neither brother had any individual source of income.

The evidence established that the bank account was opened in joint tenancy form in 1947, and the Palmer Brothers' partnership commenced business in 1949.

Following Robert's death on November 8, 1981, Brad Palmer was appointed as personal representative of his estate under Robert's will of February 7, 1977. Constance, as sole heir of Robert, petitioned the court to terminate the appointment of Brad as personal representative. She was appointed as personal representative of the estate of Robert on February 24, 1982, and continued in that capacity. William filed a petition to determine joint tenancies in the probate proceeding. A hearing was held, testimony was submitted and evidence was introduced by both sides. By Order Ruling on Motion dated March 7, 1984, the District Court denied the motion of William to determine the checking account, cattle, cattle brands and brokerage accounts passed to him as surviving joint tenant. The court further determined that all of such items of personal property were the partnership property

4

of Palmer Brothers and were to be accounted for by William as surviving partner, or his successors, to Constance, the personal representative of Robert's estate. William and Mildred, his wife and successor, appealed from the Order.

I

The issues presented require us to consider the provisions of the Uniform Partnership Act as adopted in 1947. Because there are few Montana cases which constitute authority on the legal issues before us, we have found it necessary to review the historical background of partnerships and partnership property.

John Collyer's A Practical Treatise on the Law of Partnership, originally published in England in 1832, contains an illuminating discussion of the history of the law of partnership which was well developed by cases in both England and the United States by 1830. Based upon a number of English and American cases cited in the footnotes, the treatise discusses the treatment of partnership property upon the death of one partner. The analysis is a clear forecast of the Uniform Partnership Act approach as developed almost 100 years later:

> From what has been already observed as to the want of survivorship among partners, it follows, that, upon the decease of one of several partners, his share of the movable stock and effects of the partnership, subject to the partnership debts, devolves to his personal representatives, who thereupon become, both at law and in equity, tenants in common with the surviving partners. Although, for the purpose of encouraging trade, it is held that the harsh doctrine of the jus accrescendi, which is an incident of joint tenancy at the common law, does not apply to the partnership property, yet on the decease of one of the partners, as the surviving partner stands chargeable with the whole of the partnership debts, the interest of the partners in the partnership property shall be deemed so far a joint tenancy as to enable the

> surviving partner to take the property by
> survivorship, for all purposes of holding
> and administering the estate, until the
> effects are reduced to money and the
> debts are paid. When the debts are all
> paid, the effects of the partnership
> reduced to money, and the purposes of the
> partnership accomplished, the surviving
> partner shall be held to account with the
> representatives of the deceased for his
> just share of the partnership funds.

J. Collyer, A Practical Treatise on the Law of Partnership § 129, at 117-18 (4th Amer. ed. 1853) (hereinafter cited as Collyer). In substance, this provides that upon death of a partner, his share of partnership property, subject to partnership debts, passes to his personal representative who becomes a tenant in common with the surviving partner. Further, because the surviving partner is chargeable with the whole of the partnership debts, the surviving partner is deemed to take the property by survivorship in order to administer the partnership. Finally, when the debts are paid and the partnership purpose is accomplished, the surviving partner must account to the personal representative of the deceased partner for his just share of that which remains.

The cases referred to in Collyer emphasize the contradiction between the cases decided in equity courts, where forms of ownership did not control, and courts of law, where the form of ownership of property as tenants in common or as joint tenants with right of survivorship controlled. In a partnership, even though the property was held as joint tenants, in equity survivorship would not be allowed notwithstanding the form of the deed. The treatise states as follows:

> Where lands are conveyed to certain
> persons, as joint tenants, for the pur-
> poses of a trade or an adventure, in
> equity there will be no survivorship in
> such property, notwithstanding the form
> of the conveyance.

6

Collyer, § 134 at 122 (emphasis supplied). The text develops

this theory further, stating at § 135:

> The rules and principles by which part-
> ners hold real estate, purchased by them
> with partnership funds and for partner-
> ship purposes, have been considerably
> discussed in America, . . . Several late
> decisions in Massachusetts have estab-
> lished the doctrine for that State, that
> when real estate is purchased by part-
> ners, with the partnership funds, for
> partnership use and convenience, although
> it is conveyed to them in such a manner
> as to make them tenants in common, yet,
> in the absence of an express agreement,
> or of circumstances, showing an intent
> that such estate shall be held for their
> separate use, it will be considered and
> treated, in equity, as vesting in them in
> their partnership capacity, clothed with
> an implied trust, that they shall hold it
> until the purposes for which it was so
> purchased shall be accomplished, . . .
> Upon the dissolution of the partnership,
> by the death of one of the partners, the
> survivor has an equitable lien on such
> real estate for his indemnity against the
> debts of the firm, and for securing the
> balance that may be due to him from the
> deceased partner, on settlement of the
> partnership accounts between them; and
> the widow and heirs of such deceased
> partner have no beneficial interest in
> such real estate, . . . until the surviv-
> ing partner is so indemnified.

Collyer, § 135 at 123-24 (emphasis supplied). The use of

equitable principles to disregard the legal form of joint

tenancy ownership or tenancy in common ownership was clearly

stated in the case of Hoxie v. Carr (1832), 1 Sumner 173, by

Mr. Justice Story:

> "In cases where the real estate is pur-
> chased for partnership purposes, and on
> partnership account, it is wholly immate-
> rial, in the view of a court of equity,
> in whose name or names the purchase is
> made, whether of one partner or all;
> whether in the name of a stranger, or of
> one of the firm. In either case, let the
> legal title be vested in whom it may, it
> is in equity deemed partnership property,
> and the partners are the cestuis que
> trust. A court of law may, nay, must,
> view it, in general, only according to
> the legal title."

See Collyer, § 135, at 125. This doctrine that real property acquired with partnership funds will be regarded in equity as partnership property was affirmed in Connecticut and Virginia. The author emphasizes that these principles are founded on sound policy and obvious justice and that their correctness appears incontestable.

Joseph Story, in his Commentaries on the Law of Partnership, stated the rules under which partnership real and personal property are held by the surviving partner as trustee notwithstanding legal title:

> But, however the title may stand at law, or in whosesoever name or names it may be, the real estate belonging to the partnership will in equity be treated, as belonging to the partnership, like its personal funds, and disposable and distributable accordingly; and the parties, in whose names it stands, as owners of the legal title, will be held to be trustees of the partnership, and accountable accordingly to the partners, according to their several shares and rights and interests in the partnership, as cestuis que trust, or beneficiaries of the same. Hence in equity, in case of the death of one partner, there is no survivorship in the real estate of the partnership; but his share will go to his proper representatives . . .
>
> Upon this point there has been a diversity of judicial opinion, . . . some judges holding, that in such a case it retained its original character of real estate, and passed to the heirs or devisees accordingly; and others holding, that it was to be treated throughout, as partnership property, and therefore as personalty, and belonged to the executor or administrator. The doctrine under these circumstances must be considered, as open to many distressing doubts.

J. Story, Commentaries on the Law of Partnership §§ 93 & 94 at 138-40, (5th ed. 1859) (hereinafter cited as Story).

As is apparent, the doctrine was not universally accepted. Nonetheless Joseph Story further concluded that there

was no reason to distinguish between realty and personal property so far as the partners are concerned:

> Nor is there in reality, as between the partners themselves, any difference, whether the partnership property, held for the purposes of the trade or business, consists of personal or movable property, or of real or immovable property, or of both, so far as their ultimate rights and interests therein are concerned.

Story, § 92 at 137.

This rationale was restated by James Kent in 1873:

> (2) Stock in Land--If partnership capital be invested in land for the benefit of the company, though it may be a joint tenancy in law, yet equity will hold it to be a tenancy in common, and as forming part of the partnership fund; and the better opinion would seem to be, that equity will consider the person in whom the legal estate is vested as trustee for the whole concern, and the property will be entitled to be distributed as personal estate.

3 J. Kent, Commentaries *37 (emphasis supplied).

In our present case, William based his claim primarily on the form of ownership of the joint tenancy checking account and the wording contained in a brand certificate. Had this case been considered in England or the United States prior to 1900, the predominant view would have been that legal title alone could not control and that equity would properly consider the assets to be under the control of the surviving partner for purposes of winding up the partnership, with William's claim being limited to his share of the partnership assets after the winding up and dissolution.

The foregoing is a summary of the law of the United States in existence at the time of the promulgation of the Uniform Partnership Act in 1914. That Act was adopted in Montana in 1947. We will now review the pertinent portions of the Uniform Partnership Act as adopted in Montana.

Section 35-10-203, MCA, contains a critical definition of partnership property:

> Partnership property. (1) All property originally brought into the partnership stock or subsequently acquired by purchase or otherwise on account of the partnership is partnership property.
>
> (2) Unless the contrary intention appears, property acquired with partnership funds is partnership property.

Constance contends that under this section, all of the property in question was acquired with partnership funds and is therefore partnership property.

Section 35-10-501, MCA, spells out the property rights of a partner:

> Classification of property rights of a partner. The property rights of a partner are:
>
> (1) his rights in specific partnership property;
>
> (2) his interest in the partnership; and
>
> (3) his right to participate in the management.

It then becomes necessary to consider the nature of a partner's interest in specific partnership property. The nature of a partner's rights in specific partnership property is spelled out in § 35-10-502, MCA:

> (1) A partner is co-owner with the other partners of specific partnership property holding as a tenant in partnership.
>
> (2) The incidents of this tenancy are such that:
>
> (a) A partner, subject to the provisions of this chapter and to any agreement between the partners, has an equal right with the other partners to possess specific partnership property for partnership purposes but has no right to possess such property for any other purpose without the consent of the other partners.
>
> . . .

(d) On the death of a partner that partner's right in specific partnership property vests in the surviving partner. . . . Such surviving partner or partners . . . has no right to possess the partnership property for any but a partnership purpose.

(e) Provided the proceeds of a deceased partner's interest are included in the assets of the decedent's estate, such property is not subject to a lien of the surviving spouse for his or her elective share or a lien for or allowances to surviving spouses, heirs, or next of kin.

The nature of the partner's interest in the partnership is his share of profits and surplus. Section 35-10-503, MCA, provides:

Nature of partner's interest in the partnership. A partner's interest in the partnership is his share of the profits and surplus and the same is personal property.

The dissolution and winding up of the partnership are also controlled by the Act. Section 35-10-602, MCA, states:

Partnership not terminated by dissolution. On dissolution the partnership is not terminated but continues until the winding up of partnership affairs is completed.

With regard to the causes of dissolution which are pertinent for this case, § 35-10-603(4), MCA, specifies that "the death of any partner" is a cause for dissolution of the partnership. In the present case, the death of Robert caused a dissolution of the partnership.

With regard to the winding up of the partnership by William as surviving partner, § 35-10-609, MCA, states:

Right to wind up. Unless otherwise agreed, the partners who have not wrongfully dissolved the partnership or the legal representative of the last surviving partner, not bankrupt, has the right to wind up the partnership affairs. However, any partner, his legal representative, or his assignee, upon cause shown, may obtain winding up by the court.

11

Following a dissolution, a partner has a right to have partnership property applied to discharge partnership liabilities and the surplus paid in cash to the respective partners. Section 35-10-610, MCA, states in pertinent part:

> Rights of partners after dissolution to application of partnership property or to continue business. (1) When dissolution is caused in any way, except in contravention of the partnership agreement, each partner as against his copartners and all persons claiming through them in respect of their interests in the partnership, unless otherwise agreed, may have the partnership property applied to discharge its liabilities and the surplus applied to pay in cash the net amount owing to the respective partners. . . .

Section 35-10-612, MCA, sets forth the rules for settling accounts and distribution after dissolution. In substance, as here applicable, the assets of the partnership are to be applied first to the creditors of the partnership, second to any liabilities owing to the partners other than for capital and profits, third to partners in respect of capital and last to the partners in respect of profits.

With this background, we will now consider the specific issues raised by the parties.

II

Did the District Court err in holding that the bank checking account in the names of William Palmer and Robert Palmer as joint tenants was partnership property?

The District Court's findings show that at Robert's death, William and Robert owned a checking account in which they deposited all receipts and proceeds from cattle sales and all other income and from which they paid all partnership debts and obligations, including checks to themselves for salary and other profits. The checks and deposit slips for the account were identified only as "Palmer Brothers." The signature card for that account was signed by William and

12

Robert in 1947 upon forms showing that this was a joint tenancy account with rights of survivorship. The checking account was the sole bank account used by the partnership. Several years before Robert's death, Brad Palmer also executed the signature card. As a result, there were three signatures shown on the card at the time of Robert's death.

In arguing that the court erred in holding that the bank account was not joint tenancy property, William argues that under State Board of Equalization v. Cole (1948), 122 Mont. 9, 195 P.2d 989, the signing of a joint tenancy signature card is sufficient to settle the intent on the part of the donor to make a gift in a joint tenancy. Following that case, William relies upon Casagranda v. Donahue (1978), 178 Mont. 479, 585 P.2d 1286 in which this Court stated that where intention is clearly expressed on the face of the signature card, additional evidence is unnecessary.

William also relies on the recent case of Anderson v. Baker (1982), 196 Mont. 49, 641 P.2d 1035, where we held that statements on signature cards were not conclusive where a depositor during her lifetime raised the issue of the ownership of the funds in a joint tenancy account. We therefore concluded that additional evidence may be examined to ascertain the true intent of the parties. In Anderson, the depositor had made written demand for the return of the deposit books and had filed suit to quiet title to the funds prior to the depositor's death. William then argues that the proper conclusion should be that the signature card is determinative of intent to create a joint tenancy unless one party raised the issue by affirmative action during his lifetime. William points out that the record does not show any affirmative act on the part of Robert to terminate the joint tenancy prior to

13

his death, and therefore concludes that the joint tenancy in the checking account should be upheld.

Constance in turn contends that there is substantial evidence to support the findings of the District Court that all of the moneys in the account were partnership funds, and that the account was used exclusively for more than 30 years as the only partnership account. Citing Jensen v. Jensen (Mont. 1981), 629 P.2d 765, 38 St.Rep. 927, and Speer v. Speer (Mont. 1982), 654 P.2d 1001, 39 St.Rep. 2204, Constance argues that the court will not substitute its judgment for the trier of fact, and we will consider only whether substantial credible evidence supports the findings and conclusions, leaving the credibility of witnesses and weight accorded to their testimony to the District Court.

Our review of the evidence discloses that there is clear and substantial evidence to support the findings on the part of the District Court. As a result, we agree with the conclusion of the District Court that the checking account was a partnership checking account and that the funds in the account were partnership funds. This is consistent with § 35-10-203, MCA, which provides that property acquired with partnership funds is partnership property. As a result, we also conclude that the partnership account is to be classed as specific partnership property under the provisions of § 35-10-501, MCA, and following sections.

William contends that the evidence is insufficient to overcome the joint tenancy form of the account as created in 1947 by the signature card. We do not agree with that contention. Partnership property by its very nature must be treated differently than property of individuals. Section 70-1-306, MCA, states there are three types of ownership of property by several persons:

14

> The ownership of property by several persons is either of:
>
> (1)   joint interests;
>
> (2)   partnership interests;
>
> (3)   interests in common.

As pointed out in the history regarding partnership property, the rule established in courts of equity after several hundred years of experience was to disregard the form of ownership of property acquired by partners and treat property acquired by the partnership with partnership funds as property of the partnership.  That certainly is the foundation for provisions of the Uniform Partnership Act such as § 35-10-203, MCA, which provides that all property acquired by purchase or otherwise on account of the partnership is partnership property.  That conclusion is strengthened by § 35-10-502, MCA, which provides that a partner is a co-owner of specific partnership property holding as a tenant in partnership.  In the present fact situation, Robert's share in specific partnership property vested in William upon Robert's death, and William had no right to possess the partnership property "for any but a partnership purpose." This contradicts the suggestion that the surviving partner becomes the owner of the property by survivorship in his own right and independent from the partnership.

Succeeding sections spell out how a surviving partner must apply funds from a partnership account to various liabilities of the partnership.  After the partnership liabilities have been discharged, the surplus is divided between the partners.  In this case, the surplus would be distributed one-half to the personal representative of Robert's estate and the remaining one-half to the successor in interest of William.

15

It is clear that the incidents of the property rights in the bank account as a tenant in partnership are directly contradictory to the rights which a joint tenant with right of survivorship has in a joint tenancy account. Although § 35-10-203, MCA, specifies that property acquired with partnership funds is classed as partnership property "unless the contrary intention appears," we conclude that the 1947 execution of a joint tenancy signature card does not constitute sufficient evidence of a contrary intention. That would have been an appropriate conclusion over 100 years ago and is consistent with the provisions of the Uniform Partnership Act today.

We affirm the holding of the District Court that the checking account did not pass to William and Brad, as the surviving joint tenants.

III

Did the District Court err in holding that the cattle branded with a brand registered in the names of "William Palmer or Robert Palmer" were partnership property?

William argues that because the cattle brands were registered in the name of William or Robert, a joint interest was created, resulting in joint tenancy ownership of the cattle themselves.

In its findings of fact, the District Court pointed out that Robert and William owned two livestock brands which originally were registered to William and Robert. In 1971, the brands were changed to William or Robert. The court found that during Robert's lifetime the partners branded all of the partnership cattle with one or the other of these two brands, and that all of the cattle were acquired through partnership funds.

16

We conclude that the same rationale applies here as with the checking account. Here it is clear that the cattle were acquired with partnership funds and are to be classed as partnership property, unless a contrary intention appears.

William Palmer contends that his testimony evinces a contrary intention:

> Q. Bill, what is your understanding of the nature of the ownership of these brands that you had with Bob, did you hold them as joint tenants or as tenants in common?
>
> A. Joint tenants.
>
> Q. What is your understanding of the effect of a joint tenancy ownership of property?
>
> A. That we had them, and in case one person, the survivor, had the total.
>
> Q. Can you tell me what word or words in the registration certificate indicate to you that the brands were held as joint tenants rather than tenants in common?
>
> A. Or rather than and.
>
> . . .
>
> Q. Can you tell me how that word came to be there?
>
> A. Yes. That was put there rather than and so if anything happened to one or the other it would go to the surviving person.

Notwithstanding the wording of the brand certificate, the District Court found William Palmer's testimony inconsistent and unbelievable. Conclusion of law E states:

> It is anomalous and inconsistent for William Palmer to contend: (1) that the partnership assets of little value belonged to the firm, but that those having any considerable value were owned as joint tenants with right of survivorship; and (2) that assets purchased with partnership funds and used by the firm were not partnership property.

17

The District Court concluded that it was the intent of the partners that the partnership property would not pass to the surviving joint tenant. Conclusion of law C states:

> It was the apparent intent of the partners, William and Robert Palmer, as determined from their actions and the use made of the checking account, cattle, cattle brands and brokerage accounts, that such property was and continued to be partnership assets, that it did not pass to William J. Palmer as surviving joint tenant, but must be accounted for forthwith to the personal representative of Robert's estate in the winding up and dissolution of the partnership.

We hold there is substantial credible evidence to support the court's conclusions.

We affirm the order of the District Court which determined that the cattle and cattle brands were partnership property.

IV

Did the District Court err in holding that a brokerage account, registered in the name of William Palmer for which Robert Palmer signed a document as a joint tenant, was partnership property?

William argues that the opening information sheet for the brokerage account demonstrated that William was to be the owner. He further points out that Robert and William's signatures appeared on a "Authorization to Transfer Customer's Segregated Funds" in joint ownership form, indicating an intention on both of their parts that the brokerage accounts were to be joint accounts. We find it unnecessary to settle this factual question.

The District Court found that the original deposits to the original account as well as all subsequent deposits were made with funds withdrawn by William from the partnership checking account and not from any of William's personal

money. That finding is not disputed. In addition, the court found there was no evidence to indicate Robert ever made similar or equal withdrawals to establish brokerage accounts or other investments in his individual name. We again conclude that as to the brokerage account, as property acquired with partnership funds, it became partnership property unless a contrary intention appears. William failed to show such a contrary intention.

We conclude that mere form of ownership of the brokerage account, either in the name of William alone or in the name of William and Robert as joint tenants, would not be sufficient to show such a contrary intention.

Following the rationale established for the other property, we affirm the order of the District Court in its determination that the brokerage accounts were partnership property and did not pass to William as a surviving joint tenant.

We also affirm the holding of the District Court that all of the above-described items of property are determined to be partnership property of Palmer Brothers which are to be regularly accounted for by the surviving partner, or his successor in interest, to the personal representative of the estate of Robert.

Justice

We concur:

_____
Chief Justice

John Conway Harrison

John C. Sheehy

19

_William E. Hurt, Sr._

Justices

20

Chief Justice J. A. Turnage dissenting:

I would reverse the District Court and hold that on November 8, 1981, the date of Robert Palmer's demise, his interest in the checking account, cattle and cattle brands passed to his brother, William Palmer, by right of survivorship.

The majority opinion states that § 35-10-203, MCA, contains a critical definition of partnership property:

> Partnership property. (1) All property originally brought into the partnership stock or subsequently acquired by purchase or otherwise on account of the partnership is partnership property.
>
> (2) Unless the contrary intention appears, property acquired with partnership funds is partnership property. [Emphasis supplied.]

The provision set forth in subparagraph (2), under the facts of this case, is not only critical but controls. The joint tenancy with right of survivorship checking account between Robert and William was established in 1947 and the two livestock brands were registered in the names of William or Robert as joint tenants with right of survivorship in 1971.

There could be no clearer evidence that Robert and William intended to pass this property by right of survivorship. The provision of § 35-10-203(2), MCA, has clearly been satisfied and their contrary intention has been established. If the partners had intended to hold this property other than as joint tenants with right of survivorship they could have accomplished this by the simple act of closing the bank account and reestablishing the account as one held by them as tenants in common; likewise, the livestock brands certifi-

21

cates could have been reissued designating them as tenants in common.

In Montana holding title to property in joint tenancy with right of survivorship is not only common throughout the State but is also a very important and convenient manner in which owners of property may hold title thereto, and it provides a convenient method that offers certainty as to who will succeed to the property upon demise of a joint tenant as well as providing a less expensive means of transferring the decedent's property without expense of probate. Most certainly, many owners of partnership ranch, farm and small business in Montana have utilized the joint tenancy with right of survivorship method of holding property.

The majority opinion will invite uncertainty and doubt as to the right of ownership to this property upon the demise of one of the joint tenant with right of survivorship owners, which in turn will invite litigation that most certainly will follow.

This case should be reversed and remanded with directions to enter an order determining that the checking account, livestock and livestock brands passed by right of survivorship to William Palmer.

_____
Chief Justice

Mr. Justice L. C. Gulbrandson:

I join in the dissent of Mr. Chief Justice Turnage.

_____
Justice

Mr. Justice Frank B. Morrison, Jr., dissenting:

Counsel for appellant and respondent have focused on the question of whether the assets here involved are partnership assets. Such a determination is not dispositive.

Because the parties have presented the case to the District Court on the issue of whether the disputed property was partnership property or joint tenancy property, the District Court decided the case without addressing the true issue. This Court, in its majority opinion, does deal with the issue upon which the case turns, but, in my opinion, erroneously relies upon ancient authority.

The question involved in this case is whether partnership assets can be placed in a bank account so that, upon the death of one partner, the assets will go by survivorship to the other partner. The clear weight of American authority is that partnership assets can be passed by survivorship. I will concede that John Collyer's, A Practical Treatise on the Law of Partnership, originally published in England in 1832, is generally supportive of the majority's position. Further support may be found in Hoxie v. Carr (1832), 1 Sumner 173, 12 Fed.Cas. 746. The textual reference and the case authority involve real estate. However, the majority correctly notes that J. Story, Commentaries on the Law of Partnership, asserts that the same law applies to personalty. This treatise, the most modern authority cited by the majority opinion, was published in 1859.

At the time that majority's treasured treatises were published, Blacks were chattels and women could neither own nor convey real estate. I find it useful to examine some cases decided in this century. District of Columbia v. Riggs National Bank of Washington, D.C. (D.C.App. 1975), 335 A.2d 238, stands for the proposition that partnership property can

23

be left by a survivorship. In that case, Waverly and Lulie Dickson, brother and sister, formed a partnership in 1935. Waverly predeceased his sister by three years. When Lulie died, the partnership books carried three savings accounts, with deposits totaling $11,036.65, as partnership assets. Those funds were on deposit in the names of Lulie and Waverly, as joint tenants.

In holding that those assets became Lulie's by right of survivorship on Waverly's death, the District of Columbia Court of Appeals stated:

> The UPA sets forth rules for distributing a partnership's personalty . . . after dissolution. D.C. Code 1973, §§ 41-328 to 41-342. The method set forth there, however, is not exclusive. Subject to the rights of creditors, and in the absence of fraud, partners may agree to a distribution of the property on dissolution which is different from that which would obtain under the UPA in the absence of an agreement. See Ensor v. Ensor, 270 Md. 549, 554, 312 A.2d 286, 289 (1973); Anderson v. Anderson, 215 Md. 483, 488-89, 138 A.2d 880, 883 (1958); Wallner v. Schmitz, 239 Minn. 93, 95-96, 57 N.W.2d 821, 823 (1953).

335 A.2d at 243-244.

In this case, there is absolutely no evidence to refute the intent of the partners to leave their funds in joint tenancy with right of survivorship. The account itself provides evidence that they did in fact intend to leave the funds in such a manner. When the evidence stands unrefuted, the survivorship disposition must be respected. The District of Columbia court, in Riggs National Bank, supra, addressed this question and said:

> We conclude that if partners maintain savings accounts as joint tenants, and there is evidence that they understood the consequences of joint tenancy, effect will be given to the right of survivorship. [citations omitted]
>
> * * *

24

> Also, there is no indication that Lulie
> and Waverly--both astute business
> people--did not understand and intend the
> survivorship consequences of joint
> tenancy.

335 A.2d at 244.

The case of Stroh v. Dumas (Vt. 1951), 84 A.2d 408, is factually very similar to the case at bar. William Pelton and John Dumas formed a partnership to engage in the business of buying and selling cattle. The initial money for the partnership was provided by Pelton in 1938, and deposited in a checking account entitled "W. H. Pelton, Special Account." In 1943, Pelton and Dumas signed a signature card stating "W. H. Pelton (Special Acct) subject to withdrawal of either and payable to survivor W. H. Pelton, John H. Dumas June 11, 1943." The partnership continued over the next several years to deposit its funds in and pay its bills from that account. Upon Pelton's death, the Supreme Court of Vermont held that the checking account became the sole property of the surviving partner, Dumas, stating:

> No rights of creditors are involved. As
> between themselves, the partners had the
> right to make such disposition of the
> partnership property as they deemed fit.
> 40 Am.Jur. 373; 47 C.J. 770; 68 C.J.S.
> Partnership, §75, page 515; Hunter v.
> Allen, 174 Or. 261, 267, 284, 147 P.2d
> 213, 148 P.2d 936; Ottaviano v. Lorenzo,
> 169 Md. 51, 179 A. 530, 534, 535; Green
> v. Whaley, 271 Mo. 636, 651, 197 S.W.
> 355; Sargent v. Blake, 8 Cir., 160 F. 57,
> 64, 17 L.R.A., N.S., 1040, 1046; Upson v.
> Arnold, 19 Ga. 190, 63 Am.Dec. 302;
> Lefevre's Appeal, 69 Pa. 219, 8 Am.Rep.
> 299, 233; Crane on Partnership 392;
> Gilmore on Partnerships 128. The Uniform
> Partnership Act recognizes this right and
> provides that the intention and agreement
> of the parties is to control. [emphasis
> supplied.]

84 A.2d at 410.

Other cases which are generally supportive of this position are Hirsch v. Bartels (Fla. 1950), 49 So.2d 531, and

25

Bailes v. Bailes (Ark. 1977), 549 S.W.2d 69.  I have been unable to find any American cases in the last 100 years that support the majority's position here.

This case should be reversed and remanded with directions to enter a declaratory order determining that the subject joint tenancy funds passed by right of survivorship.

_____
Justice